219 Pa. Superior Ct. 198 (1971)
Ritmanich et al., Appellants,
v.
Jonnel Enterprises, Inc. et al., Appellants.
Superior Court of Pennsylvania.
Argued April 15, 1971.
June 22, 1971.
*199 Before WRIGHT, P.J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.
*200 Herman C. Kimpel and Clyde T. MacVay, with them Robert A. Jarvis, Eugene J. Reinbold, and James A. Ashton, and Dickie, McCamey & Chilcote, and Beck, McGinnis & Jarvis, and Evans, Ivory & Evans, for appellants.
Dale Cleland, with him Helen Mercer Witt, and Charles Kirshner, and Cleland, Hurtt and Witt, and Rosenberg, Kirshner & Solomon, for appellees.
OPINION BY MONTGOMERY, J., June 22, 1971:
These appeals involve eleven law suits filed in trespass which were brought to recover damages for personal injuries and property destruction caused by the partial collapse of a shopping center building in the Borough of Monroeville, Allegheny County, Pennsylvania, on August 11, 1968. The plaintiffs are tenants and their employees. The original defendants are the owners of the building, Jonnel Enterprises, Inc. (Jonnel), and a lessee of a major portion of it, Gold Coast, *201 Inc. The cause of the collapse is alleged to have been faulty construction of the building, which defects were not communicated to the plaintiffs.
Upon being served with the complaints, the original defendants filed complaints to join the additional defendants above named, which complaints alleged that they participated in constructing the building and their negligence caused its collapse. Bilotta Construction Company (Bilotta) was alleged to have been the general contractor; Charles Roberts, the architect; Fahringer, McCarty, Grey & Associates (Fahringer), the engineers; and the others, the subcontractors. David Ross Adams and Vernon Adams, d/b/a Adams Steel Erection and Adams Steel Erection, Inc. (Adams) allegedly provided all services for erection of the steel and Oltrado Lisotto (Lisotto) allegedly provided all masonry services.
Motions for summary judgment were filed by most of the additional defendants and were granted, inter alia, to Bilotta, Adams, Fahringer, and Lisotto. Exceptions to these orders were filed by the additional defendant, Charles Roberts,[1] and they were dismissed by the court en banc after argument. Thereafter, the other named appellants joined in these appeals filed by Charles Roberts.
Elizabeth Festa, the appellant at 217 April Term, appealed from the judgments entered in favor of Bilotta, Adams and Gold Coast, Inc. However, no brief was filed by this appellant and the case was not argued by appellant's counsel. Although the same issue *202 is involved in this case as to Bilotta and Adams that is herein decided in the other appeals, we shall not dismiss this appeal as to those parties. On the other hand, no argument was advanced by anyone in support of the appeal relating to Gold Coast, Inc., and for that reason we conclude that the appeal was abandoned as to that party and it will be dismissed as to it.
On this review we lack the aid of a definitive opinion from the lower court regarding any basis for its judgments since the court en banc filed only a terse opinion stating its legal conclusion, ". . . that the pleadings, depositions and all other matters of record in these cases demonstrate that there is no genuine issue to any material fact with respect to the alleged liability of the defendants [appellees] . . ." However, in the orders relating to Adams, to which Roberts filed exceptions, Hon. Arthur WESSEL, JR., stated, ". . . counsel for the original defendant who accomplished the joinder of these parties as additional defendants having indicated that he would not contest the Motion for Summary Judgment . . ." The record referred to by the court en banc consists of the pleadings, unanswered interrogatories which were filed by Adams directed to Jonnel, and the depositions of James M. Bilotta and Elmer Jonnet. James M. Bilotta was the president of Bilotta at the time of the accident, and Elmer Jonnet is the president of Jonnel. These depositions are of great importance in these appeals since they are relied on almost exclusively by the appellees in support of their motions for summary judgment; they not having filed any supporting affidavits;[2] and all parties apparently *203 being content that the facts were well pleaded since none of them filed preliminary objections or moved for judgment on the pleadings. Thus, we must examine these depositions to determine, under Pa. R.C.P. No. 1035, which was designed to remedy the situation where there is a sufficiently pleaded but factually improper claim or answer, whether the nonmoving parties' claims or pleadings are a sham. Ruhe v. Kroger Company, 425 Pa. 213, 228 A. 2d 750 (1967). In doing so, we are to accept as true all well pleaded facts in the nonmoving parties' pleadings, as well as the admissions on file, giving to them the benefit of all reasonable inferences to be drawn therefrom; the record must be examined in the light most favorable to them; and in passing upon a motion for summary judgment, it is no part of our function to decide issues of fact but solely to determine whether there is an issue of fact to be tried and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968).
Besides the major question raised by appellants, whether there exist genuine disputes of fact involving the three appellees, which we shall consider seriatim, each of the three appellees who filed briefs on this appeal raised additional legal questions. Adams relies on Jonnel's failure to answer interrogatories; and Fahringer, that Jonnel failed to reply to new matter in its answer. All appellees challenge the standing of Roberts (and the other appellants) to object to the summary judgments. Finally, Bilotta and Adams join in raising a question of procedure under Pa. R.C.P. No. 1035, claiming that the appellants are barred from recovery by failing to file affidavits or depositions in support of their objections to the motions for summary judgment.

*204 BILOTTA
Pursuant to Pa. R.C.P. No. 1045, Bilotta filed an answer to Jonnel's complaint, denying identity, agency, and possession or control of the property or instrumentality involved, thus placing those matters at issue in these cases. Relying on the deposition of Mr. Bilotta and Mr. Jonnet, Bilotta argues that Mr. Bilotta was hired by Jonnel individually and not as the agent of Bilotta. In his deposition Mr. Jonnet, always insisting that it was Bilotta which was hired to supervise the construction of the building, admitted that he, Mr. Jonnet, in effect supervised Mr. Bilotta's activities, on the phases "which I felt were critical", and further testified, "Everyone worked directly under Mr. Bilotta and I was the overseer of Mr. Bilotta"; that Mr. Bilotta did not hire the subcontractors and never handled any money on the project. However, Mr. Bilotta's admission in the record that part of his compensation for services was paid directly to Bilotta sufficiently puts at issue the question of identity in these cases.
Furthermore, there is an additional controlling reason for disallowing the summary judgment in favor of Bilotta in these cases. Since Mr. Bilotta was the president of Bilotta at the time of the accident and Bilotta is offering his testimony in support of its motion for summary judgment, on which it must rely exclusively, and, since, as we have already noted, the only other affidavit or deposition offered in these cases is that of Mr. Jonnet, which we have ruled contains no admissions fatal to its cause of action against Bilotta, then the so-called Nanty-Glo rule, as established in the case of Nanty-Glo Boro v. American Surety Company, 309 Pa. 236, 163 A. 523 (1932), is applicable. The Commentary to Rule 1035 in the 1971 Supplement to Binders 1 & 2 Goodrich-Amram 363, contains an excellent discussion of this rule, which we quote in part as follows:
*205 "Under the Federal rules, in determining whether the moving party has satisfied his burden of proof, the courts have considered the motion for summary judgment somewhat analogous to a motion for a directed verdict on trial. Where a directed verdict would be granted on the evidence presented at trial, a motion for summary judgment may, under the Federal decisions, be properly granted.
"However, in Pennsylvania, since time immemorial, the courts have held that in negligence matters the court may not direct a verdict for the plaintiff on his uncontradicted oral testimony. Credibility is still a matter for the jury. See Kopar v. Mamone, 419 Pa. 601 (1966), and cases cited therein."
Goodrich-Amram, supra, page 365, further states: "The above decisions of the Supreme Court, if followed under the new summary judgment practice, mean that unsupported affidavits of the moving party or his witnesses, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury. Where, however, the adverse party makes admissions, either in his pleadings or in response to requests for admissions, interrogatories or depositions, these admissions, as distinguished from the moving party's affidavits, may afford a sound basis for summary judgment."
Therefore, we conclude that any questions of fact raised by Mr. Bilotta's deposition will not support its motion for summary judgment but must be resolved by the trier of fact.

ADAMS
The contentions of Adams pointedly call to our attention the fact that, in spite of the gravity of these causes of action, the facts from which the cause of the collapse of the building might be determined do not *206 appear in the present record, although there are various opinions expressed therefor. As stated in appellant's brief, "It does appear, however, that one of the interior columns of the building in some manner failed, and the failure was either due to lightning striking the building, as contended by Mr. Jonnet, or a failure of the column due to negligence, as averred by the plaintiffs."
Adams contends that at the present stage of the proceedings the original defendants should have developed the facts more fully. And, secondly, they rely on the testimony of Mr. Jonnet which, they contend, demonstrates an admission by him that his complaint against them is a sham.
The column which allegedly failed, including the remainder of the steel work, had been erected by Adams Steel Erection. According to the testimony of Mr. Bilotta, Adams had put in the base plate for the column and then were required to level it when they put up the steel column. In response to a question by counsel for Adams on whether Adams had properly erected the steel work, Mr. Bilotta testified, "We wanted them to lift the column higher off the pads because the elevations of the floors and the roofs are ultimately determined by the height of the columns, and either they could not lift them any higher than they were or they would not . . . I don't remember . . . and I didn't like that." Although this testimony might not be sufficient to prove that Adams were negligent, it certainly casts some doubt on their contentions at this stage in the proceedings.
However, Adams contends that the following testimony of Mr. Jonnet amounts to an admission that they were not negligent: "Q. Then am I correct that insofar as these law suits are concerned dealing with the collapse of the building, you have no complaint about the work done by Adams? A. No, sir. Q. Do you know of any person who has knowledge of any improper work *207 done by Adams which would have in any way contributed to the collapse of the building? A. No, sir."
These so-called admissions by Mr. Jonnet do not entirely rule out the possibility that, based upon the facts that later may be more fully developed at trial, an expert may give an opinion from which a fact finder might be able to find negligence on the part of Adams. In spite of Mr. Jonnet's negative responses in the deposition, Mr. Bilotta's testimony has provided the required scintilla of evidence which leaves the fact still in dispute.
The unanswered interrogatories propounded by Adams to Jonnel consisted largely of questions similar to those answered by Mr. Jonnet in his above quoted testimony, as to the names of witnesses and facts upon which he based the allegations of negligence in the original defendant's complaint. Therefore, that they remained unanswered is not material to the issues now confronting us. Moreover, the proper remedy available to the party propounding interrogatories is to apply for sanctions under Pa. R.C.P. No. 4019(a) when they are unanswered.

FAHRINGER
We have also examined the deposition of Mr. Jonnet to determine, as contended by Fahringer, whether his testimony has completely nullified the allegations of the original complaint. The complaint averred that Fahringer, which "were to provide any and all necessary engineering services in connection with the erection of the structure," were negligent in doing so, i.e., "As to Fahringer, McCarty, Grey and Associates: a. In improperly providing engineering services; b. In failing to properly inspect and supervise the progress of the work; c. In failing to provide professional advice in accordance with the standards of the industry; d. In failing to follow plans and specifications as provided by *208 the owner and/or general contractor; e. In failing to direct the progress of the work in a proper manner; f. In violating the rules, regulations, ordinances and statutes applicable; g. In otherwise being negligent."
Mr. Jonnet testified that he had never seen anybody from Fahringer on the job site at any time; that the piers or caissons about which load bearing data had been provided by Fahringer were still intact and still holding the structure as they were before the accident; that the only function performed by Fahringer was to "dig out the caisson load and they submitted it to me and I submitted it to Mr. Roberts and put the caissons in accordingly".
Thus there appears to be a conflict in Mr. Jonnet's testimony on whether data provided by Fahringer was or was not used for the pier that allegedly collapsed. Summary judgment cannot be granted in those circumstances, particularly in view of the law previously stated, that the record must be viewed in the light most favorable to the nonmoving party.
We also find that the new matter in Fahringer's answer contains no affirmative defenses, consisting entirely of conclusions of law or negative pleadings, factual allegations which are denials of the averments in Jonnel's complaint. In such case, it is unnecessary to file a reply. 1. Goodrich-Amram, § 1030-4.

ABSENCE OF OPPOSING AFFIDAVITS
Besides offering little opposition to the motions for summary judgment and declining to appeal therefrom, Jonnel, as well as all other appellants, failed to file affidavits or depositions to support Jonnel's complaint. It is contended by Adams and Bilotta that paragraph (d) of the Summary Judgment rule requires that procedure, as follows, "(d) . . . when a motion for summary judgment is made and supported as provided in *209 this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."
The appellees also cite Mallesky v. Stevens, 427 Pa. 352, 235 A. 2d 154 (1967), where the additional defendant moved for summary judgment, citing the deposition of the plaintiff in support thereof. The defendant having submitted nothing in opposition, the motion was granted. Mr. Justice SAMUEL J. ROBERTS, in a concurring opinion, stated, at page 357, "Stevens could thus not rely upon allegations in this third-party complaint that Hritz had also caused damage to the plaintiffs and was compelled, upon penalty of summary judgment, to support his allegations by affidavit or otherwise."
However, we find the Mallesky case distinguishable for the reason that in that case the plaintiff's deposition was clear in its assertion of facts which contradicted the original defendant's complaint joining the additional defendant, whereas, as we have discussed herein, we have found the facts sworn to in the depositions immaterial, contradictory or entirely too ambiguous to support the motions for summary judgment. In that event, it is our interpretation of that part of the Pa. R.C.P. Rule No. 1035 cited above, that the nonmoving party need not file any affidavit or depositions since there then is nothing left to be opposed.

LISOTTO[3]
Jonnel originally had averred that Lisotto improperly performed the necessary masonry work and that he *210 failed to follow the plans and specifications as provided by the owner and general contractor. We have, in the manner followed with Bilotta, Adams and Fahringer, examined the depositions of Mr. Bilotta and Mr. Jonnet and find no admissions therein and we also find no testimony which would have had to be answered by appellants. Therefore, Lisotto's motion for summary judgment also remains unsupported by affidavit or deposition and the orders granting it will also be reversed.
The latter discussions also lay to rest the final argument of the appellees, that the appellants have no standing on these appeals. Since the supporting depositions have failed, the pleadings stand as they were before the motions for summary judgment were filed. We thus need not decide the question of standing at this time.
All judgments in favor of Bilotta, Adams, Fahringer and Lisotto are reversed with a procedendo.
The appeal at 217 April Term, 1971, is dismissed as to Gold Coast, Inc.
WRIGHT, P.J., took no part in the decision in this case.
NOTES
[1] Although the appellees question the standing of all appellants, their objection is not based upon the apparent failure of many of the appellants to file exceptions to the orders granting the summary judgments. Moreover, in the recent case of Davis v. Pennzoil Company, 438 Pa. 194, 264 A. 2d 597 (1970), it was held that a single judge may enter summary judgment; a court en banc is not required.
[2] Counsel for Gold Coast, Inc., at argument handed us a "Report of Inspection Made of Building Structures in Monroe Plaza" which, of course, cannot be considered by us as an affidavit for the reason that it has not been sworn to, even if it were properly in the record, which is a fact that is vigorously denied by Adams.
[3] Lisotto did not file a brief on these appeals.