## Harsco Corporation v.
## National Forge Company

*Buchanan, Ingersoll, Rodewald, Kyle & Buerger, James D. Morton, Thomas M. Thompson; Mervine & Calderwood, by W. S. Calderwood,* for plaintiffs.

*Cravath, Swaine & Moore; Harper & Clinger, by William F. Clinger,* for defendants.

WOLFE, P. J., October 21, 1971.—For determination is defendant's motion for partial summary judgment following the close of the pleadings.

The facts, pleadings, exhibits and depositions are multitudinous but the issue to be resolved is clear and narrow, namely, is there a genuine issue as to any material fact that would prevent the court from entering partial judgment against plaintiffs as a matter of law?

Defendant's motion is directed at plaintiffs' claims for incidental and consequential damages arising out of defendant's alleged breach of contract executed between the parties. Defendant asserts that certain terms and conditions of the contract exonerates it from recovery of incidental and consequential damages if, in fact, a breach did occur.

After a review of the pleadings, exhibits, affidavits and argument of counsel, we hold the motion must be denied.

The contract was finally consummated after a long series of oral and letter negotiations commencing on or about May 14, 1964.

The subject matter of the contract involved the construction, by defendant, for plaintiffs, of one complete automatic isostatic press (a dry pressing of clay process for manufacturing clay pipe) for producing 15-inch and 24-inch clay pipe.

Plaintiffs' complaint alleges defendant undertook to manufacture the press with warranty attached and, in reliance thereon, plaintiffs, on or about January 8, 1965, placed its order for the press with defendant. The complaint alleges, under paragraph 12 and following, that defendant knew, or should have known, plaintiffs were relying upon the skill, knowledge and experience of defendant to construct the press; that defendant did deliver the press; that plaintiffs paid $121,622.17 as partial payment therefor and, subsequent to delivery, defendant was unable to correct defects in the press to make it commercially operable and, therefore, plaintiffs did, on December 18, 1969, reject it. The complaint thereafter demands incidental and consequential damages by reason of the alleged breach by defendant and demands judgment for the return of the down payment, together with interest

thereon, plus an additional $763,314.12, with interest, for loss of equipment and personnel expenditures and at least $50,000 for loss of profits.

In support of the ad damnum clause, plaintiffs allege that most of the incidental and consequential expenditures were incurred in reliance on defendant's repeated promises and assurances that it would provide an operable press and defendant knew, or should have known, plaintiffs were erecting a plant and auxiliary equipment in expectation thereof and to be used in conjunction with the press and that this additional equipment and capital outlay would be a loss to plaintiffs.

In defense of these allegations, defendant answers that its acceptance of plaintiffs' proposal to construct the press specifically limited its liability. In this regard, defendant relies upon its written acceptance of January 28, 1965, of plaintiffs' press order. This acceptance is *typed* upon defendant's usual shop order and consists of two pages. On page 1 of 2, the acknowledgment has *printed* thereon the following language:

"This is a copy of your order as we have entered it, and is subject to conditions on the reverse side. If not correct in every detail notify us immediately. Always refer to our order number in correspondence regarding above. All orders are entered subject to delays caused by accidents, fires, strikes or other causes beyond our control. Terms of payment, ½ of 1%, 10 days, 30 days net."

On the reverse of the acknowledgement of order are seven *printed* conditions of sale. The conditions are identical on both pages.

Defendant points specifically to the fourth condition which provides:

"The seller shall be liable only to replace such products as may be found to be defective or to allow

credit for such products at its option, and shall not be liable for transportation or installation charges, expenses for repairs or replacements, including, but not limited to, buyer's machine expense, for any loss or reduction of profits or for loss of use or for indirect or consequential damages of any kind, whether arising from delay in delivery, breach of warranty or from any other cause whatsoever."

This acceptance is executed by Harry C. Jackon, a former market manager of defendant.

It is, therefore, the position of defendant the "conditions of sale" bar plaintiffs from recovering any consequential damages.

Plaintiffs refute, by deposition, that the printed "conditions of sale" were, in fact, a part of the typewritten contract and rely upon the last sentence of the typewritten shop order providing, "all above (reference to automatic isostatic press) is in accordance with your (plaintiffs) order and no exceptions are taken."

In short, it is plaintiffs' position the printed "conditions of sale" on the reverse of defendant's shop order and acceptance of January 28, 1965, were not intended by the parties to be part of the contract between them and offer the supporting deposition of James B. Millikan taken on December 17, 1970 at Greensboro, N. C. This witness was the president of Pomona Corporation since 1968. At page 76 thereof, he stated he did not examine defendant's shop order in detail and did not note the language on its face, "this is a copy of your order as we have entered it and is subject to conditions on the reverse side." And again on page 78 stated he did not read the terms and conditions on the back of the shop order.

In the same manner, the deposition of Eugene C. Clemens was offered, taken on March 30, 1971, and established the deponent is the president of plaintiff

Can-Tex Research Association and at page 80 thereof stated:

"After reading the bottom line of the acceptance I concluded that it says 'all above are in accordance with your purchase order and no exceptions were taken'. So, we concluded there were no exceptions including conditions on the back of the purchase order . . . acceptance."

Again, at page 81, stated:

"The last sentence of the purchase order to him meant that they (Defendant) would deliver what we had ordered in the time we had ordered it and it would perform as specified."

Further, exhibit D, which is the proposal to plaintiffs from defendant under the general heading of "introduction" and specifically, paragraph 1.1 and 1.2 provides:

"1.1 BASIS OF PROPOSAL

"The National Forge Company, Pressure Systems Division (hereinafter called the Company or Corporation) proposes to design, manufacture, deliver F.O.B. point of shipment with railroad shipment allowed and supervise the installation of one automated isostatic pressing system for the production of clay sewer pipe.

"This equipment will be produced in accordance with preliminary specifications submitted by Pomona Can-Tex Research Association and modified by letter dated August 20, 1964 with exceptions identified in Section 6 of this proposal.

"1.2 LIMITATIONS OF PROPOSAL

"The equipment covered by this proposal shall include a complete isostatic dry bag press with pumping system and controls to receive powdered clay, metered by others, introduce the clay into the pressure vessel, press, remove a pressed sewer pipe and place on a conveyor to be furnished by others.

"The press will have the capability to produce a variety of pipe diameters.

Again, at paragraph 6.0 of the proposal, is the following paragraph:

### "ADVANTAGE OF DEALING WITH *NATIONAL FORGE*

"6.0. The National Forge Company is an integrated steel producer with facilities to completely produce high pressure components and systems.

"The company's pressure systems division has been formed to add automated systems designed capability to an already established "know-how" in the field of isostatic pressing.

"Mr. Donald E. Witkin, Engineering Manager, Pressure Systems Division, will have direct responsibility for this project. A resume of Mr. Witkin's past experience in applicable areas appears on the following page.

"This design capability, plus National Forge's experience in producing high pressure vessels and isostatic presses, has indicated on the enclosed installation list, *provides a complete single source responsibility for the entire system from concept to production of sewer pipe.* (Italics supplied.)

Finally, is the affidavit of Harry C. Jackson and the reply affidavit of Henry LeMeur, a vice president of defendant.

The former's affidavit, paragraphs 5, 6, 7, 8, 9 and 10 concludes he personally drafted and signed defendant's acceptance typed on defendant's shop order, that the Pressure Systems Division of defendant did not, at that time, have its own printed form, gave no thought to the language printed on the reverse side of the form, that the shop order was intended to be defendant's acceptance of plaintiffs' order and not merely a quota-

tion submitted for the information of plaintiffs and he intended the order to be defendant's acceptance with no exceptions placed.

The latter's deposition establishes deponent was the direct supervisor over Harry Jackson; that he negotiated the deal with plaintiffs which led to plaintiffs' purchase order and defendant's acceptance thereof; that Harry Jackson was never given authority to negotiate any provisions of that contract and that he directed his assistant to write the purchase order on defendant's shop order form; that, according to deponent, this was done in order defendant's conditions, which were on the back of defendant's shop order, would become part of the contract.

From a review of all of the pleadings, including new matter, affidavits and depositions and argument of counsel, there is no indication that the parties had any mutual meeting of the mind to limit any liability of defendant. Nonetheless, the court does not have the prerogative to go into the merits of defendant's argument and to resolve the issue between the parties. All that the defendant now advances may be true but it is not for the court to determine. Plaintiffs deny the printed conditions on the stationery used by defendant to accept plaintiffs' order was part of the contract and defendant states to the contrary.

The law in this regard is clear. Summary judgment can be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law": McFadden v. American Oil Company, 215 Pa. Superior Ct. 44 (1969); Toth v. Philadelphia, 213 Pa. Superior Ct. 282, 247 A. 2d 629; Pennsylvania Rule of Civil Procedure 1035.

The burden is on the moving party and the record must be examined in the light most favorable to the non-moving party: Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968):

" 'The court must consider both the record actually presented and the record potentially possible at the time of trial. . . . A hearing on a motion for summary judgment is not a trial on the merits, and the Court on such motion should not attempt to resolve conflicting contentions of fact.' "

"It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts. . . under such circumstances the case is not one to be decided by the Trial Judge on a motion for summary judgment": S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F.2d 235, 237-38 (C.A. 6 Cir.), cert. denied, 375 U.S. 824 (1963).

In the recent case of Ritmanich v. Jonnell Enterprises, Inc., 219 Pa. Superior Ct. 198 (1971), the familiar rule was again confirmed that, "where a party moves for a summary judgment, . . . the court is to accept as true all well pleaded facts in the nonmoving parties' pleadings, as well as the admissions on file, giving to them the benefit of all reasonable inferences to be drawn therefrom, and the record must be examined in the light most favorable to them."

As this court has previously stated, the foregoing cases make it apparent the trial judge should not grant such a motion that there is any legal possibility on the face of the record, or if, considering the entire record, there is a fair inference of fact to be resolved by the jury emanating therefrom. On the other hand, these cases also make it clear in the words of the rule, if there is no genuine issue as to any material fact, the motion

should be granted. Of course, the difficulty in resolving such a motion is to determine if the record and supporting affidavits make it clear there is no issue to be tried or, if there are fair inferences flowing from the record that are in dispute which would entitle plaintiff to have those issues resolved by the triers of the facts.

This court cannot escape the conclusion the printed "conditions of sale" upon which the typewritten acceptance was made are not in harmony with the parties' prior negotiations and raises, if not directly, at least a fair inference that the parties never contemplated the printed conditions to be part of their contract.

Defendant's counsel argues very ably that there is no conflict in fact, between the affidavit of defendant's former employe who executed the acceptance and Defendant's vice president Henry LeMeur. With this, we cannot agree. A fair reading of both affidavits leaves no question that the deponents are in conflict as to the intent of the defendant concerning possible damages. The Jackson affidavit clearly establishes that there are a number of clauses contained in the printed "conditions of sale" that were contrary to what this employe, who was acting on behalf of defendant at that time, believed was the agreement between the parties and further, this employe was using this stationery as a matter of convenience, as the Pressure System Division did not have its own printed forms. This is supported by the numbering of the pages on the order form. As stated, the order form consists of two pages with identical conditions printed on the back of each page. Both pages were numbered by a typewriter by defendant as "Page 1 of 2" and the second shop order page was numbered by typewriter by defendant "Page 2."

On the other hand, Mr. LeMeur's affidavit not only

attacks the authority for Jackson to negotiate any provisions of the contract but states affiant directed Jackson to write the purchase order on defendant's shop order form. This affidavit also attacks, by inference, Jackson's credibility. These matters are for the jury and not the court to resolve. See Nanty-Glo Borough v. American Surety Company, 309 Pa. 236 (1932), and as distinguished by Rivoli Theatre Company v. Allison, 396 Pa. 343 (1959).

It is the court's opinion, even in the absence of the two affidavits, the decision would be the same. The deposition of plaintiffs' officials coupled with the parties' prior negotiations concerning the uniqueness of the unit to be constructed, its complexity and expense might well have left defendants with the impression that their liability in the event fulfillment could not be made should be limited. At time of trial, this, of course, will be an issue. But, as the record now stands, it is not so clear that reasonable men cannot disagree as to the intent of the parties when their attention is directed to damages in the event of breach. It is the court's opinion, if defendant intended to limit its liability, this intent was not conveyed directly and purposely to plaintiffs so that the parties could resolve not only the nature of any damages but the extent thereof prior to the execution of the contract. But, here again, the court cannot undertake to resolve these matters.

Defendant argues it had a legal right to limit its liability under the provisions of the Uniform Commercial Code. With this, we agree. But this argument does not go to the issue before the court. The issue to be resolved is whether or not the parties so agreed to limit their liability.

Last, defendant argues the conditions on the back of the shop order are terms in addition to those which

plaintiffs allege were on the purchase order, that is, that there is no conflict between the "conditions of sale" and the "purchase order" and the language "all above in accordance with your purchase order and no exceptions are taken" goes only to the actual manufacturing and assembling the press. If this be the case, it appears to the court that any additional language which the parties did not previously negotiate over cannot be made part of the contract. This would be an ex parte proceeding on defendant's part to impose conditions other than which the parties agreed to. Defendant justifies this position by arguing plaintiffs never objected to these limitations when they received the confirmation and, since they were there, plaintiffs had a duty to avoid the effects of them and cites a recent case of J. A. Maurer, Inc. v. Singer Company, N.Y.L.J. February 9, 1970; 7 U.C.C. Reporting Service 110.

A reading of this case does not disclose that there were any conflicting depositions or affidavits indicating the intent of the parties. If there were such pleadings, they do not appear in the case nor their significance in relation to the intent of the parties. This case also shows defendants limited, ex parte, its consequential damages by 10 times giving plaintiffs notice of denial of liability through modifications of the original order. We think if a plaintiff is told 10 times defendant is not accepting any consequential damages, that should be sufficient in the absence of any other elements and there would be a duty to respond to it.

In the instant case, however, the history preceding the consummation of the contract does not warrant a conclusion as a matter of law that plaintiffs accepted the terms limiting defendant's liability or that an estoppel would be worked upon them.

For the foregoing reasons, this court concludes

defendant's motion must be denied and makes the following

ORDER

And now, October 21, 1971, the motion of defendant for partial summary judgment is denied. Exceptions noted for defendant.