## Roberts v. Hazle Yellow Cab Co.

*Bart E. Ecker, Jr.* and *Edward F. Silva,* for plaintiffs.
*Joseph A. Murphy,* for defendant.

PODCASY, *J.,* November 5, 1979—On March 24, 1976, female plaintiff, Elva Roberts, then six-months pregnant, was riding as a passenger in a taxi owned by defendant and operated by one of defendant's drivers within the City of Hazleton. An accident occurred, and Mrs. Roberts was thrown forward, striking her stomach on the back of the driver's seat of the cab. A month later her child, a baby girl, was stillborn. Suit was thereafter commenced by the filing of a complaint in trespass, setting forth two distinct causes of action, one by the female plaintiff as administratrix of the stillborn child's estate, and another by the parents individually.

The cause of action set forth by the mother as administratrix of the stillborn child's estate con-

tains two counts, one being an action for wrongful death and the other being a survival action. The cause of action set forth by the parents individually also contains two counts, one being an action by female plaintiff to recover damages for her bodily injuries and for the physical pain, mental anguish, loss of earning power, and disabilities allegedly associated therewith, and the other being an action by the male plaintiff to recover damages for the loss of consortium and health care expenses allegedly resulting and expected to result from his wife's injuries.

Defendant has filed a motion for summary judgment, to which plaintiffs have filed an answer, and we now have before us the question of resolution of the issues raised by the filing and presentation of these documents.

Defendant contends that the filing of an answer in response to a motion for summary judgment is not permissible under the Rules of Civil Procedure.

Pa.R.C.P. 1035, governing motions for summary judgment, is applicable not only to actions in assumpsit, but also actions in trespass, by virtue of Pa.R.C.P. 1041. By the same token, Pa.R.C.P. 1017, specifying the pleadings allowable in actions in assumpsit, is equally applicable to actions in trespass by virtue of Pa.R.C.P. 1041.

In examining Pa.R.C.P. 1017, we find that the "pleadings" must be limited to a complaint, an answer thereto, a reply if the answer contains new matter or a counterclaim, a counter-reply if the reply to a counterclaim contains new matter, a preliminary objection, and an answer thereto.

In examining Pa.R.C.P. 1035, we find that "after the pleadings are closed" any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions, and sup-

porting affidavits, if any, on file. Inasmuch as a motion for summary judgment cannot be filed until the "pleadings" are closed, we must conclude that defendant's motion for summary judgment is not to be considered a "pleading" within the definition of pleadings set forth in the applicable Rules of Civil Procedure, and we find no other Rule of Civil Procedure which would authorize the filing of an answer to such a motion: 2 Goodrich-Amram 2d §1035(a):4, and §1035(b):1.

Pa.R.C.P. 1035(b) allows the adverse party to serve an "opposing affidavit" on the moving party prior to the day of hearing on a motion for summary judgment, but the answer filed by plaintiffs in this instance is not verified and therefore cannot be considered as equivalent to the "opposing affidavit" permitted by Pa.R.C.P. 1035(b). This being the case, we concur with defendant's contention that the filing of the answer was improper, and that the answer is a superfluous document which must be ignored in our consideration of the issues before us except to the extent that it includes admissions of those facts alleged in the motion which relate to the happening of the accident, the birth of the stillborn child a month later, the commencement of both wrongful death and survival actions by the female plaintiff as administratrix of the estate of the stillborn child, and the expenditure of a total of only $524.40 for medical and hospital expenses. We therefore hold that the answer filed by plaintiff must be stricken except to the extent that it incorporates the above admissions of fact: Penncrest Constr. Corp. v. Martin, 65 Lanc. 427 (1976); Moyer v. Mid-Penn Bank, 48 Northumb. 349 (1975); 2 Goodrich-Amram 2d §§1035(b):1 and 1035(d):2.

Our task at this juncture is to render the judgment sought by defendant if the pleadings, depo-

sitions, and admissions on file show that there is no genuine issue as to any material fact and that defendant is entitled to a judgment as a matter of law, or to refuse to render such judgment in the absence of such a showing. This is the clear mandate of Pa.R.C.P. 1035(b).

If we do not find it appropriate to render the judgment sought by defendant, and if we conclude that a trial is necessary, it is our responsibility, upon examination of the pleadings, depositions, and admissions before us and upon interrogation of counsel during the hearing on the motion to ascertain, if practicable, what material facts exist without substantial controversy and what material facts are actually and in good faith controverted, and to thereupon enter an order specifying these facts which appear to be without substantial controversy (including the extent to which the amount of damages or other relief is not in controversy), and to direct such other proceedings as are just, so that upon the trial of the action the facts so specified by us shall be deemed established, subject to the inherent power of the trial judge to reexamine our order: Pa.R.C.P. 1035(c); 2 Goodrich-Amram 2d §1035(c):1, 2, 3.

Upon the filing of defendant's motion, plaintiffs were under an obligation to set forth specific facts by depositions, answers to interrogatories, admissions and/or affidavits sufficient to show that there is a genuine issue for trial and, in the absence of such a showing, it is our duty to enter summary judgment against plaintiffs, if appropriate: Pa.R.C.P. 1035(d). In reviewing the record before us for this purpose, it is our duty to view it in the light most favorable to plaintiffs: Ritmanich v. Jonnel Enterprises, Inc., 219 Pa. Superior Ct. 198,

280 A. 2d 570 (1971); Dowlin v. Coatesville Area School District, 22 Pa. Commonwealth Ct. 433, 350 A. 2d 190 (1975); and a failure by plaintiffs to file counter-affidavits does not necessarily mean that summary judgment will be entered: Amabile v. Auto Kleen Car Wash, 249 Pa. Superior Ct. 240, 376 A. 2d 247 (1977). A summary judgment should never be entered upon a defect in the pleadings which can be cured by amendment: Industrial Valley Bank & Trust Co. v. Washington, 2 Phila. Interloc. Civil Opin. 346 (1978); and in considering the record, we may consider any depositions filed prior to argument: BP Oil, Inc. v. Hampden Twp. Comrs., 27 Cumb. 275 (1977). See Foreman v. Basilon, 4 Butler 285 (1966). Here, as in the case of all motions, the burden of proof is on the moving party: Ammerman v. Lush, 236 Pa. Superior Ct. 231, 345 A. 2d 271 (1975); and summary judgment may be entered in only the "clearest of cases": Kotwasinski v. Rasner, 436 Pa. 32, 258 A. 2d 865 (1969); as summary judgment is proper only if the moving party would be entitled to binding instructions at the trial: Bremmer v. Protected Home Mut. Life Ins. Co., 436 Pa. 494, 260 A. 2d 785 (1970).

We may not, in our discretion, grant a summary judgment merely because we may not believe that the plaintiffs will prevail at trial: 2 Goodrich-Amram 2d §1035(b):4. Nor may we grant a summary judgment where there is an issue of credibility involved relating to evidence presented by the moving party: Nanty-Glo Boro. v. American Surety Co., 309 Pa. 236, 163 Atl. 523 (1932). On the other hand, plaintiffs here cannot rely simply on the averments of their complaint to defeat defendant's motion for summary judgment, but must set forth specific facts sufficient to establish that there are

one or more genuine issues of fact, utilizing for this purpose depositions, admissions, and/or affidavits: 2 Goodrich-Amram 2d §1035(b):5.

With the above principles in mind, we must address ourselves to an examination of the various contentions set forth in defendant's motion for summary judgment.

One of defendant's principal contentions is that the mother, as administratrix of her stillborn child's estate, has no survival cause of action and no cause of action for wrongful death, despite the fact that she was bearing a six-month viable fetus en ventre sa mere at the time of the accident. In support of this contention, defendant cites two Ohio cases. The first case cited: Williams v. Marion Rapid Transit, Inc., 152 Ohio St. 114, 87 N.E. 2d 334 (1949), held that a child who is born alive has a cause of action to recover damages for prenatal injuries sustained while a viable fetus en ventre sa mere, and that such a cause of action existed at common law. This case does not conflict with Pennsylvania law, but has no direct bearing on the issue before us.

The second Ohio case cited by defendant is Stidam v. Ashmore, 109 Ohio App. 431, 167 N.E. 2d 106 (1959), in which the Court of Appeals of Madison County, Ohio, in a two-to-one split decision, held that a cause of action exists for the wrongful death of a viable unborn child which is subsequently stillborn. This case is precisely on point, insofar as an administratrix's action for wrongful death is concerned, and much of the reasoning of the Ohio majority opinion is persuasive. Pointing to the language of the earlier Williams case to the effect that a viable fetus is a "person" whose rights are protected by the Ohio Constitution, and to earlier Ohio decisions to the effect that

the administratrix of the estate of a child who is born alive but who dies after birth has a cause of action for wrongful death resulting from prenatal injuries sustained while a viable fetus, the majority of the Ohio Court takes the position that it is the viability of the fetus at the time of injury which is critical to the existence of the cause of action, and that it is irrelevant whether the child is later born alive or stillborn. The Ohio Court felt that to hold otherwise would be to fly in the face of established scientific truth, and to hold, contrary to such established truth, that a fetus is to be legally considered merely a part of the mother's body until birth, without regard to the extent of its physical development and its capability of sustaining independent life upon removal from the mother's womb.

As persuasive as this language may be, it represents a decided minority view, as stated by the dissenting judge. The dissenting judge in the Stidam case points out that no Ohio Court had ever recognized the right of the mother, as next of kin of her viable but still unborn fetus, to bring an action for personal injuries sustained by the fetus and that, unless the fetus itself has a cause of action while still unborn, there can be no cause of action which "survives" the death of a fetus which is stillborn subsequent to injury. The dissenting judge also goes on to point out that, while the Ohio Courts had long recognized that a viable fetus en ventre sa mere is to be considered a person in being for purposes of succession to property if it is later born alive (and therefore able to personally benefit from its inheritance), such a fetus is not to be considered a person in being for such purposes if it is stillborn (and therefore unable to benefit from its inheritance). This being the case, the dissenting judge felt that a wrongful death action, being purely

statutory, in derogation of the common law, and therefore subject to the rules of strict construction, could not be interpreted to confer a right of recovery on the "next of kin" of a stillborn child. However, we note here and will note later in this opinion, that there is no rule of law, in Ohio or elsewhere, which precludes a pregnant mother from recovering damages for her own physical and mental suffering occasioned by a miscarriage precipitated by the negligent act of a third party. See 10 A.L.R. 2d 639, action for death of unborn child.

Pennsylvania has consistently followed the majority view that there can be no wrongful death or survival action by the administratrix of the estate of a stillborn child, following much the same line of reasoning as that followed by the dissenting judge in the Stidam case in Ohio. The leading cases are Marko v. Phila. Transportation Co., 420 Pa. 124, 216 A. 2d 502 (1966), and Carroll v. Skloff, 415 Pa. 47, 202 A. 2d 9 (1964). We are bound by these decisions of our Supreme Court and must therefore dismiss the survival and wrongful death actions brought by the mother as administratrix. In the Carroll case (involving a ten-week old fetus) and the Marko case (involving a six-month old fetus), the viability of the fetus was admitted for purposes of defendant's motion, so these cases clearly must control the issue before us, as has been recently affirmed by our Superior Court in Scott v. Kopp, _____ Pa. Superior Ct. _____, 395 A. 2d 956 (1978).

Another of defendant's principal contentions is that, inasmuch as medical bills for care and treatment of the female plaintiff have thus far totalled only $524.40, she can have no cause of action for personal injuries and her husband can have no cause of action for medical expenses on her behalf

or for loss of consortium because such causes of action are barred by the No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq.

Plaintiffs' complaint alleges in paragraph 8 that "the reasonable value of reasonable and necessary medical services is in excess of $750.00 as to plaintiff Elva M. Roberts," that "she has been prevented from performing her duties which constitute her usual and customary daily activities for more than 60 consecutive days," and that "the injury is permanent, irreparable and severe." All of these allegations are incorporated in all the following counts of the complaint as though set forth therein at length, by virtue of paragraph 11 of the complaint.

In the second cause of action, brought by plaintiffs individually rather than on behalf of the stillborn child, the female plaintiff, in the first count thereof, alleges, in very general terms, that as a result of the accident she sustained injury to her stomach, breasts, female organs, etc., plus severe shock to her nerves and nervous system, "some or all of which wife plaintiff has been advised are or may be permanent in nature" (paragraph 20). The female plaintiff also avers that, as a result of such injuries, she has undergone and will continue to indefinitely undergo, great physical pain and mental anguish (paragraph 21), that she has suffered and will continue indefinitely to suffer impairment of her earning power (paragraph 22), and that she has been and will continue indefinitely to be unable to attend to her usual and daily duties (paragraph 23).

In the same second cause of action, the male plaintiff in the second count thereof alleges past, present, and future loss of consortium (paragraph

24), that he has expended to date $524.40 for medical and hospital expenses on behalf of his wife, and that he will be obliged to expend large sums of money for medicine and medical treatment for his wife "for an indefinite time in the future" (paragraph 25).

Despite the rather grandiose averments of the complaint, we find nothing whatsoever in the deposition of the wife plaintiff to indicate that there is any reasonable basis to anticipate future medical or hospital expenses in excess of the $524.40 already spent, and plaintiffs' answer to defendant's motion for summary judgment, in our view, admits that there is no real expectation that future medical or hospital expenses will be incurred, as does the female plaintiff on page 26 of her deposition. The complaint would meet the requirements of an exception to the No-fault Act if it alleged with reasonable certainty that medical expenses would ultimately be in excess of the $750 threshold amount, even though such expenses had not been incurred at the time of filing of the complaint: McLaughlin v. Gonshor, 69 Luz. 216 (1979); Mabey v. Michkens, 7 D. & C. 3d 792 (1978); Bromiley v. Collins, 1 D. & C. 3d 94 (1977). However, the complaint in this instance in our opinion fails to make such an averment with anything approaching the requisite reasonable certainty, and the subsequent deposition of the female plaintiff negates expenditures in excess of $524.40.

We must therefore conclude that no exception to the No-fault Act exists insofar as medical services is concerned. The $524.40 already expended is payable by plaintiffs' no-fault insurer, and is not recoverable against defendant even if no-fault

threshold requirements are otherwise established with regard to non-economic detriment suffered by plaintiffs: McLaughlin v. Gonshor, supra.

Section 301 of the No-fault Act provides that a tortfeasor remains liable for non-economic detriment if the accident results in "death," or "serious and permanent injury," or "medically determinable physical or mental impairment which prevents the victim from performing all or substantially all of the material acts and duties which constitute his usual and customary daily activities and which continues for more than sixty consecutive days." 40 P.S. §1009.301(a)(5)(A) and (C).

Insofar as impairment of normal function is concerned, we find that, although paragraph 8 of the complaint (which is incorporated by reference in plaintiffs' second cause of action by virtue of paragraph 11) avers such impairment for more than 60 consecutive days, and although paragraph 23 of the complaint (which is part of the first count of the second cause of action) avers that female plaintiff has been and will continue indefinitely to be unable to attend to her usual and daily duties, the subsequent deposition of the female plaintiff shows clearly that her injuries at no time prevented her from performing all or substantially all of the material acts and duties which constituted her usual and customary daily activities as a housewife and mother (pp. 16, 22-25). It is therefore apparent at this point that plaintiffs have failed to fall within the exception to the No-fault Act relating to impairment of normal function.

Insofar as "serious and permanent injury" is concerned, despite the allegations set forth in paragraph 8 and in the first count of plaintiffs' sec-

ond cause of action in reference to the seriousness and permanency of the injuries sustained by female plaintiff, the only injury which her deposition describes which could be described as at all "serious" in nature is the suffering of a miscarriage allegedly as the result of being thrown about in defendant's taxi on March 24, 1976. Defendant contends that the birth of a child, whether the child is born alive or stillborn, is a normal physical function rather than an injury. In general that may be the case, but, where a miscarriage is precipitated by the pregnant mother being tossed about inside an automobile, we are satisfied that the suffering of a miscarriage is a natural and foreseeable result of the tossing about and that it is indeed an injury of a serious nature to any mother. We also are of the opinion that it is a permanent injury, for the stillborn fetus is lost forever. If the fetus is to be treated as simply a part of the mother's body, she has permanently lost that part of her body when the miscarriage occurs. If the fetus is to be treated as a living thing once it has reached a viable stage of development, then this living thing dies sometime prior to or simultaneously with the stillbirth, in which case there has been a "death," which itself is sufficient to constitute an exception to the No-fault Act. The act does not specify that there must be the death of a "person." The death of a viable fetus en ventre sa mere is sufficient, in our view, to constitute an exception to the No-fault Act, irrespective of the question whether such a viable fetus is or is not to be considered a "person" in the event that there is a subsequent stillbirth.

At the trial of this case the issues should be relatively simple. There appears to be no doubt that an

accident occurred on March 24, 1976, in which female plaintiff was thrown forward into the front seat of the taxi, and that her child was later stillborn. There also appears to be no doubt that the physical injuries sustained by female plaintiff were relatively minor and of relatively short duration except for the miscarriage itself and whatever emotional and mental turmoil she suffered as a result thereof, and female plaintiff's deposition indicates no permanent impairment of earning power. Consequently, the issues at trial should, in our opinion, be confined to proof of the negligence of defendant's driver, proof of a causal relationship between the trauma suffered at the time of the accident and the subsequent stillbirth, proof of the nature and extent of the physical injuries and related mental or emotional distress experienced by female plaintiff, and proof of the damages, if any, suffered by male plaintiff due to loss of consortium.

Our order is attached hereto.

## ORDER

It is hereby ordered, adjudged and decreed as follows:

(1) Defendant's motion for summary judgment is hereby sustained insofar as it relates to plaintiff administratrix's first cause of action, and said first cause of action is hereby dismissed;

(2) Defendant's motion for summary judgment is hereby denied insofar as it relates to plaintiffs' second cause of action; and

(3) The issues at trial are to be limited in accordance with the foregoing opinion.