## Mobil Oil Corp. v. Hammermill Paper Co.

*David M. Weixel*, for plaintiff.
*Robert A. Gallagher*, for defendant.

BROWN, *P.J.*, March 22, 1983—The underlying facts giving rise to the present litigation occurred on April 30, 1981 when a truck tractor owned by plaintiff and operated by plaintiff's employee arrived at defendant's place of business in Lock Haven. Plaintiff's truck and employee were on defendant's premises for the purpose of an oil delivery. While plaintiff's vehicle was being unloaded it was struck by a train operated by defendant's employees which resulted in property damage to plaintiff's truck tractor in the amount of $3,098.78. In addition, plaintiff incurred a towing bill of $150

for removal of the vehicle from defendant's premises.

Following the accident, plaintiff and defendant's insurance carrier began negotiations with regard to resolving the claim. On June 12, 1981, plaintiff corresponded with defendant's carrier indicating that it agreed with the carrier's estimate of $3,098.78 as representing damages to the vehicle and in addition, submitted a towing bill of $150. Plaintiff then requested that defendant's carrier forward to it the sum of $3,248.78.

By letter dated June 15, 1981, defendant's carrier responded with a letter to plaintiff which contained the following language:

"Your claim has received our careful consideration and we have concluded that our insured was not solely responsible for this accident.

Consequently, we are not able to reimburse you in full for the cost of repairing your vehicle.

A qualified appraiser reports the reasonable cost of repairing your vehicle is $3,098.78. In an effort to be entirely fair in this matter, we enclose our check for 50% of that amount, $1,549.39."

At the bottom of this letter, there also appeared the following handwritten sentence:

"We do not feel our insured is completely at fault since you parked your tractor on the train track."

In addition to the check of $1,549.39 referred to in the above letter, defendant's carrier also sent a check for $75 representing one-half of the towing charge, thereby making for a total sum of $1,624.39 forwarded to plaintiff.

By letter dated June 30, 1981, plaintiff in a letter to defendant's carrier acknowledged receipt of the sum of $1,624.39, but stated that plaintiff disagreed with the carrier's theory with respect to

plaintiff's negligence in parking the truck on the tracks. The letter then demanded an additional $1,614.39 (sic) from the carrier. Thereafter, various pieces of correspondence were exchanged between plaintiff and defendant's carrier over the issue of comparative negligence and the question of whether defendant was entirely at fault in the matter and was obligated to pay the entire claim. That correspondence was not successful in resolving the matter and the present litigation was filed November 19, 1981.

Initially, in support of its motion for summary judgment, defendant contends that there has been an accord and satisfaction in this matter based upon defendant's tender of the two checks representing 50 percent of plaintiff's damages and plaintiff's endorsement and negotiation of these checks. It is argued that this conclusion is one that can be made as a matter of law and that it extinguishes any cause of action that the plaintiff might have against defendant. Plaintiff disputes this contention and argues that the question of accord and satisfaction under the previously recited circumstances is an issue of fact and not a question to be resolved as a matter of law.

As plaintiff has correctly pointed out, summary judgment is an extraordinary remedy. It may only be granted if the moving party shows that there is no genuine issue of fact and the record shows that the moving party is entitled to judgment as a matter of law. The facts and the record must be viewed in a light most favorable to the non-moving party, and the burden of proof is on the moving party. Under these guidelines a summary judgment should be granted in only the clearest of cases. The real function of the court in such a context is not to decide any issue of fact but rather to determine if there is an issue of fact to be tried. Any doubts as to the

existence of a genuine issue of a material fact must be resolved against the moving party. Ritmanich v. Jonnel Enterprises, Inc., 219 Pa. Super. 198, 280 A. 2d 570 (1971).

With regard to the law of accord and satisfaction, defendant has cited Law. v Mackie, 373 Pa. 212, 221, 95 A. 2d 656, 660 (1953). In that case the court reaffirmed the following principle of law:

"Where there is a dispute or disagreement between the debtor and the creditor as to their respective rights, a payment tendered in full satisfaction of the other's claim operates as an accord and satisfaction if the payment is accepted and retained."

Defendant has also cited the case of Melnick v. National Airlines, 189 Pa. Super. 316, 150 A. 2d 566, 569 (1959) for the following:

"The general principle is well established that when a claim is disputed or unliquidated and the tender of a check or draft in settlement thereof is of such a character as to give the creditor notice that it must be accepted in full satisfaction of the claim, or not at all, the retention and use thereof by the creditor constitutes an accord and satisfaction."

Implicit in these definitions of accord and satisfaction, as well as in the other appellate authorities cited by defendant, is the requirement that the payment be tendered in full satisfaction of the creditor's claim. In this case, the checks in question were tendered by defendant's insurance carrier accompanied by its letter of June 15, 1981. A review of that letter reveals no specific language from which it can be clearly deduced that the payment was tendered in full satisfaction of the claim. A summary of the letter indicates that defendant's carrier entertained the thought that its insured was not

solely responsible for the accident and that the carrier therefore was not able to reimburse plaintiff in full for the cost of repairs. The letter then went on to state that defendant's appraiser reported the damages to be a certain amount, and that in an effort to be entirely fair in the matter, the carrier was enclosing its check for 50 percent of the claim. Nowhere in the letter is there a statement that the check was being tendered in full settlement of the claim, nor is there any indication in plain language that the check if negotiated would operate as an accord and satisfaction.

Considering the fact that defendant's carrier is routinely engaged in the business of resolving and settling claims, the absence of such words may well be material in resolving this ambiguity since one would normally think that claims personnel of an insurance carrier would not attempt to settle a claim in full unless clear language to that effect was used. Weighing this factor along with the rule that a summary judgment can be granted only in the clearest of cases, the court is reluctant at this stage of the proceedings to grant a summary judgment on the basis of accord and satisfaction. It may well be that other nuances and circumstances of the happenings that occurred after the accident between the parties will be relevant in assessing whether an accord and satisfaction exists.

Defendant's second argument is somewhat tied into its accord and satisfaction argument. In this argument, defendant contends that the presentation of the check to plaintiff was an offer of a full and complete compromise settlement of the incident, and as such the acceptance and endorsement of the check constituted an acceptance of the offer of settlement. The difficulty with this argument is the same difficulty that presents itself with respect

to accord and satisfaction. Nowhere is it clear in the letter of June 15, 1981 that in fact the tender of the check was accompanied by an offer in settlement. Accordingly, defendant's argument on this theory must also be rejected.

The court notes that defendant has also relied upon the various pieces of correspondence which were sent after June 15, 1981 between its carrier and plaintiff. Defendant argues that these letters make it manifestly clear that the check was tendered either as an accord and satisfaction or as an offer of a settlement based upon the language in the subsequent letters stating that the check had been submitted in full settlement of the claim. The difficulty in accepting defendant's argument regarding this post-June 15, 1981 correspondence is that it is an attempt to create an intent that was not necessarily manifest in the June 15, 1981 letter. If such an intent did not exist on June 15, 1981, then subsequent letters stating that it did exist would not be decisive and certainly could not form the basis for finding that the intent existed. In this regard, defendant's carrier would be bound by its representations and communications on or prior to June 15, 1981, and would not be able to retract them because of the correspondence and communications of intent that occurred after June 15, 1981. In the court's judgment it may well be determined that defendant's carrier had realized its mistake in its letter of June 15, 1981 by not clearly stating that it was tendering the check in full settlement of the claim, and the written efforts thereafter were an attempt to lock the door after the check had been released. If this is true, it is not up to the court to rescue defendant's carrier from a predicament of its own creation.

## ORDER

And now, March 22, 1983, based upon the foregoing opinion, it is hereby ordered that defendant's motion for summary judgment be dismissed and the requested relief be denied.