Kotwasinski et al., Appellants, *v.* Rasner (et al., Appellant).

Argued April 30, 1969. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Richard D. Solo,* with him *Solo, Abrams, Bergman, Trommer & Padova,* for plaintiffs, appellants.

*Richard J. Gordon,* with him *Dilworth, Paxson, Kalish, Kohn and Levy,* for defendant-tenant, appellant.

*Gerald Gornish,* with him *Goodis, Greenfield, Narin & Mann,* for agent, appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 11, 1969:

Sophia G. Kotwasinski, McErlane Knitting Mills, Inc., Samuel Steinberg and Normandie Yarn Mills, Inc. are all commercial tenants in a loft building owned by Phyllis Rasner and Mildred Gutman, which building is managed by Lanard & Axilbund, Inc. as agents for the owners. On January 15, 1964, Kotwasinski, McErlane and Steinberg occupied, separately, the first four floors of the building, while Normandie occupied the fifth floor. On that date, a sprinkler pipe in the ceiling of Normandie's premises froze and burst, thereby releasing a torrent of water which did considerable physical damage to the property of the tenants on the floors below. Kotwasinski, McErlane and Steinberg brought suit against Rasner and Gutman, the owners, Lanard

& Axilbund, their agent, and, subsequently by amendment to the complaint, Normandie, the occupant of the fifth floor. The suit alleged negligence against the defendants in failing to replace broken windows, in removing heating units and otherwise allowing conditions to exist which caused the freezing of the sprinkler pipe.

Upon completion of the pleadings, Lanard & Axilbund moved for summary judgment in accordance with Rule 1035, Pa. Rules of Civil Procedure. Its motion was based upon two clauses in the leases of the plaintiffs which purportedly exculpated the agent from any liability. The court below granted summary judgment in favor of Lanard & Axilbund and the plaintiffs appealed. Defendant Normandie also appealed on the theory that it was being deprived of its right to contribution from Lanard & Axilbund in the event of a judgment against it.

Before reaching the merits of these appeals, we must dispose of a question relating to our jurisdiction. The amounts in controversy with respect to Kotwasinski and McErlane are each in excess of $10,000.00 and have been so certified by the court below. No such certification exists relative to Steinberg's appeal, however, for the very good reason that his claim is for $5,422.50, an amount below the jurisdictional limit for appeals to this Court in this class of cases. Appellee has not filed a motion to quash Steinberg's appeal but has raised the question in its brief. We conclude that inasmuch as the claims of two of the appellants are sufficient to confer jurisdiction and the questions as to all of the plaintiffs' appeals are essentially identical and their interests inseparable, we shall retain jurisdiction over all of the appeals. It would defy reason to decide the appeals of Kotwasinski and McErlane while remitting Steinberg's appeal to the Superior Court, since that

court would, in any event, be bound by our decision in the appeals which we retained. See 4 C.J.S. Appeal & Error §76 i; *Craig v. Williams,* 90 Va. 500, 18 S.E. 899 (1894).

The question on the merits involves the effect of two clauses contained in the plaintiffs' leases on the possible liability of Lanard & Axilbund, who managed the building for its owners. The paragraphs in question are identified as Paragraphs 11 and 13(d) of the plaintiffs' leases. Paragraph 11 is as follows:

"11. Lessee agrees to ~~be responsible for and to~~ relieve and hereby relieves the Lessor from all liability by reason of any injury or damage to any person or property in the demised premises, whether belonging to the Lessee or any other person, caused by any fire, breakage or leakage in any part or portion of the demised premises, or any part or portion of the building of which the demised premises is a part, or from water, rain or snow that may leak into, issue or flow from any part of the said premises, or of the building of which the demised premises is a part, from the drains, pipes, or plumbing work of the same, or from any place or quarter, *unless* [inked in] such breakage, leakage, injury or damage be caused by or result from the negligence of Lessor or its servants or agents ~~or any person or persons whatsoever.~~

"Lessee also agrees ~~to be responsible for and~~ to relieve and hereby relieves Lessor from all liability by reason of any damage or injury to any person or thing which may arise from or be due to the use, misuse or abuse of all or any of the elevators, hatches, openings, stairways, hallways of any kind whatsoever which may exist or hereafter be erected or constructed on the said premises, or from any kind of injury which may arise from any other cause whatsoever on the said premises or the building of which the demised premises is a part *unless* [inked in] such damage, injury, use,

misuse or abuse be caused by or result from the negligence of Lessor, its servants or agents ~~or any other person or persons whatsoever~~." (Emphasis supplied.)

The material which is shown above as stricken from the clause is stricken only in the Kotwasinski lease. The McErlane and Steinberg leases contain all of the stricken language and the inked in word "unless" does not appear.[1] Clearly, then, there was an attempt by the lessors to exculpate themselves and their agents from liability for damages, even if caused by their own negligence, except in the Kotwasinski lease, in which the lessors are obviously made liable for damages resulting from their negligence.

As additional exculpation insurance for Lanard & Axilbund, paragraph 13(d), which reads as follows, appeared in each of the leases: "It is expressly understood and agreed that the said Lanard & Axilbund, Inc., notwithstanding its designation herein as 'Lessor', shall act as agent and shall not in any event be held liable to the owner or to the Lessee for the fulfillment or nonfulfillment of any of the terms or conditions of this lease, for the return to Lessee upon termination of this lease or under any other circumstances, of rent or other sums received by it as Lessor hereunder; or for any errors of omission or commission of the Agent or its employees in the general management of said premises or for any action or proceeding that may be taken by the owner against Lessee, or by Lessee against the owner." The single question which we must determine is whether the language of these lease clauses is sufficiently clear and exact to exculpate Lanard & Axilbund as a matter of law.

_____

[1] In the McErlane and Steinberg leases, instead of the word "unless" being inked in as it is in the Kotwasinski lease, the word "whether" appears. The import of the clause is therefore clearly different in the two situations.

This Court, most recently, considered exculpatory clauses of the type here involved in *Employers L. A. C. v. Greenville B. Men's A.*, 423 Pa. 288, 224 A. 2d 620 (1966). In that case, the lessee's insurer sued the lessor on the theory that the lessor's negligence was responsible for the rupture of a sprinkler system pipe and consequent damage to the lessee's property. The lessor's defense was based upon an exculpatory clause typed into the printed lease, which provided: "[Lessor] shall not be responsible and [lessee] agrees, for any damages occurring to the property of [lessee]." We did not permit that clause to insulate the lessor from liability, nor do we permit such insulation to result from the clauses here in question.

We can do no better now than to reiterate the language of *Employers L. A. C.*, supra, pp. 291-292, where we detailed the standards which must be met before an exculpatory clause will be construed to relieve a person of liability. We there said: "Generally speaking, an exculpatory clause is valid if: (a) 'it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or State . . . .' (Dilks v. Flohr Chevrolet, 411 Pa. 425, 434, 192 A. 2d 682 (1963) and authorities therein cited); (b) 'the contract is between persons relating entirely to their own private affairs' (Dilks v. Flohr Chevrolet, supra, page 433); (c) 'each party is a free bargaining agent' and the clause is not in effect 'a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely.' (Galligan v. Arovitch, 421 Pa. 301, 304, 219 A. 2d 463 (1966). [footnote omitted]

"Assuming, *arguendo*, that the instant exculpatory clause satisfies all three conditions and is valid, our case law requires that, even if valid, an exculpatory

clause must meet certain standards. 'Despite the general *validity* of exculpatory provisions, certain standards have been established which must be met before an exculpatory provision will be interpreted and construed to relieve a person of liability for his own or his servants' acts of negligence.': Dilks v. Flohr Chevrolet, supra, p. 434.

"Such standards are: (1) contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law (Galligan v. Arovitch, supra, p. 303; Crew v. Bradstreet Co., 134 Pa. 161, 169, 19 A. 500 (1890)); (2) such contracts 'must spell out the intention of the parties with the greatest of particularity' (Morton v. Ambridge Borough, 375 Pa. 630, 635, 101 A. 2d 661 (1954)) and show the intent to release from liability 'beyond doubt by express stipulation' and '[n]o inference from words of general import can establish it' (Perry v. Payne, 217 Pa. 252, 262, 66 A. 553 (1907)); (3) such contracts must be construed with every intendment against the party who seeks the immunity from liability (Crew v. Bradstreet, supra, p. 169); (4) the burden to establish immunity from liability is upon the party who asserts such immunity (Dilks v. Flohr Chevrolet, supra, p. 436)." (Emphasis in original)

The instant case and *Employers* are strikingly similar. In both cases, the tenants alleged that the condition which resulted in the water flow occurred prior to the lease. In both cases, the condition which caused the sprinkler system to fail existed in areas not leased to the tenant and beyond the tenant's control. In both cases, the tenants had no knowledge or reason to know of the condition and the lessor and his agents did know of the condition. We there held that "if a clause in a written agreement purporting to extend immunity from

liability for negligent conduct is to embrace negligent ·conduct occurring *before* as well as *after* the execution of the agreement, the intent of the parties to that effect must be expressed with the utmost clarity and without any ambiguity. . . . When parties enter into a lease agreement they are contemplating a status which will be created in the future; their engagements undertaken are to be performed in the future, not the past. If a party seeking immunity from liability for negligent conduct intends exculpation for past as well as future negligent conduct it is his obligation to express in the agreement such intent in an unequivocal manner; absent a clear expression of intent, the clause of exculpation will not be so construed." (emphasis in original).

The instant case is, if anything, stronger than *Employers*. There the exculpatory clause was typed into a printed lease, not, as here, part of the fine print of the lease where it would least likely be found. In *Employers* we cited with approval *Saewitz v. Levittown Shopping Center, Inc.*, 34 Pa. D. & C. 2d 499 (1963), in which a clause virtually identical to paragraph 11 as it exists in the Steinberg and McErlane leases was refused retroactive effect.

Lanard & Axilbund makes several arguments, all of which we have considered and found unpersuasive. Foremost among these is that even if the owners are liable to Kotwasinski—and through the owners, their agents may also be liable—paragraph 13(d) exonerates the agents. This argument is, of course, predicated on the view that 13(d) is broad enough to exculpate the agent from any and all liability. Appellee points specifically to the language of that paragraph purporting to release it from liability "for any errors of omission or commission . . . or for any action or proceeding that may be taken by the owner against Lessee or by Lessee

against the owner." We conclude that the "any errors of omission or commission" language is not sufficiently clear to meet the test of *Employers* relative to past negligent conduct. Moreover, this is both an action against the owner and the agent, the action against the agent being for its own negligence as manager of the building.

There is some merit to appellee's contention that the complaint and affidavit do not properly raise the question of negligence predating the leases. Paragraph 5 of the counter affidavit does indicate that appellee's negligence "in part pre-dated leases on which suit is brought", albeit without the precision contemplated by rule 1035(c).[2] Since, however, summary judgments, like judgments on the pleadings, should only be granted in the clearest of cases, we are reluctant to foreclose appellants' opportunity to establish this vital fact.

Since we hold that *Employers* is controlling, and that the exculpation clauses, singly or in concert, fail

---

[2] Interpreting this rather imprecise statement on behalf of appellants in the way most favorable to them, it would appear to mean that Lanard & Axilbund, Inc. had permitted the condition which caused the bursting of the sprinkler system piping to come into being before the relationship between the parties was controlled by the exculpatory clause contained in paragraph 13(d) set forth above. From the affidavit of Stanley Fried in support of appellee's motion for summary judgment, we learn that the leases held by the appellants at the time of the damage were dated, respectively, December 28, 1961, January 2, 1962, and April 14, 1959. It is also then stated, and not contradicted in the counteraffidavit, that appellant McErlane, whose officer was the affiant in the counteraffidavit, had leased its portion of this loft building continuously since 1951 under two earlier leases containing language identical to paragraph 13(d). The antecedent nature of the alleged negligence may therefore be rather difficult for McErlane to prove at trial. It is to be noted, moreover, that that portion of the building in which the piping burst had been vacant from May 31, 1959 until June 11, 1963.

to exculpate appellee for past negligence, we need not consider the public policy argument, relative to the Ordinance of the City of Philadelphia, advanced by appellants. Nor do we consider whether any of these leases are contracts of adhesion or whether the exculpatory clauses are sufficiently specific as to geographical area.

The judgment of the court below is reversed and the case is remanded for further proceedings consistent with the views expressed herein.

Mr. Justice ROBERTS dissents for the reasons set forth in his dissenting opinion in *Employers L. A. C. v. Greenville B. Men's A.,* 423 Pa. 288, 296, 224 A. 2d 620, 625 (1966).

Mr. Chief Justice BELL took no part in the consideration or decision of this case.