### Eitel v. Stroba

*Harvey Abramson,* for plaintiff.

*Richard W. Cleckner & James R. Clippinger,* for defendants.

DOWLING, J., August 2, 1974.—In a scene reminiscent of Frank Stockton's immortal classic "The Lady or The Tiger", Mrs. Eitel, when she stepped out of her bedroom, found directly opposite to her on the other side of the hall, two doors exactly alike and side by side. In the fictionalized version, there lurked behind the one door a ferocious tiger, behind the other, a lovely maiden. The alternatives facing this lady in real life were not quite so dramatically different but, nevertheless, provided an important contest, for behind the one door was the bathroom and behind the other, the basement stairs. We never learned what was behind the door opened in the story, but we do know Mrs. Eitel made the wrong choice, for she was precipitated into the cellar, suffering injuries which have resulted in the instant suit.

The matter is before us on defendants' motion for summary judgment pursuant to Pennsylvania Rules of Civil Procedure 1035. The motion lists no reasons, as would appear to be the better practice*, but from the contentions advanced at oral argument and from counsels' briefs, it is apparently defendants' position that Mrs. Eitel was guilty of contributory negligence and that this is so evident from the depositions that the court should exercise this extraordinary remedy and terminate the litigation without affording the aggrieved party the opportunity to have a jury pass on defendants' liability.

Rule 1035(a) reads as follows:

"After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any."

It is well settled and beyond reasonable dispute that such a severe dispository procedure should not be granted except in the "clearest" of cases where there is not the least doubt as to the absence of a triable issue of material fact: Mallesky v. Stevens, 427 Pa. 352 (1967); Kotwasinski v. Rasner, 436 Pa. 32 (1969); Toth v. Philadelphia, 213 Pa. Superior Ct. 282 (1968); McFadden v. American Oil Co., 215 Pa. Superior Ct. 44 (1969).

The burden of proving the absence of any genuine issue of fact is on the moving party and all doubt in reference thereto must be resolved against that moving party: Schacter v. Albert, 212 Pa. Superior Ct. 58 (1968); Prince v. Pavoni, 225 Pa. Superior Ct. 286 (1973). See also our recent opinion in Morgan v. Continental Casualty Co., 96 Dauph. 283 (1974).

The basic factual background as it emerges from the

---

* See 2B Anderson Pa. Civ. Prac. § 1035.11.

pleadings and discovery is not in dispute. The Eitels and the Strobas have been social acquaintances for some years and plaintiffs had been overnight guests in defendants' home on various occasions. When this occurred, Mr. and Mrs. Eitel would occupy the bedroom off a hallway leading from the living room area of the home. As one entered the hallway from this direction, the "Eitel bedroom" was the first doorway on the left. There was one other doorway on the left-hand side of the hallway, this doorway leading to a second bedroom further down the hall occupied by the owners of the premises, defendants Guenther and Mary Ann Stroba. On the right-hand side of the hallway there were located three doors which, coming from the living room area, were a door leading to a stairway to the basement, a door to the only bathroom in the house, and a door giving entry to a third bedroom. All of the doors were basically identical in physical appearance and unmarked. The doorway to the bathroom was almost directly across the hall from the doorway to the "Eitel bedroom" and directly next to the doorway leading to the stairs.

On the night in question, the Eitels were staying with the Strobas prior to the parties leaving in the morning for a joint vacation. Before retiring for the night, all the lights in the house were turned out by Mrs. Stroba and there were no night lights left on. During the night, Mrs. Eitel got up to go to the bathroom. There was a light switch in her bedroom containing a panel of three push buttons; one switch controlled the lights in her bedroom, the second a series of outlets and the third, the hallway. Mrs. Eitel stated that while she was aware that one of the lights controlled the hallway she did not know which switch it was and she was afraid that if she began pushing buttons she would turn on lights in other portions of the

house. She, therefore, proceeded to the hallway, opened what she thought was the bathroom door only to fall down the basement steps.

The determinative factor under the decisional law in this area appears to center around the degree of darkness or shades of light: Dively v. Penn-Pittsburgh Corp., 332 Pa. 65 (1938). In the wife-plaintiff's deposition, there was wrung from her an admission that it was "pitch-black" as she was standing in the doorway, looking into the hallway.

"Q. Now, as you were standing in the doorway and you decided that you weren't going to turn on that switch, what could you see in the hallway?

"A. Nothing.

"Q. Was it totally black or—

"A. It was dark.

"Q. My question was, was it totally black or could you see some outlines.

"A. No.

"Q. It was totally black?

"A. Yes.

"Q. No lights coming from anywhere?

"A. No.

"Q. Including the outside of the house?

"A. Yes.

"Q. Pitch-black.

"A. It was dark.

"Q. Was it pitch-black.

"A. Yes."

Subsequent to her deposition, plaintiff filed an affidavit in which she stated that she was not a naturalized citizen of the United States, did not understand all of the subtleties of the English language and understood the term pitch-black to mean nothing more than dark. She further explained that while the hallway was dark when she stood in her room she waited for her

eyes to adjust to the darkness before proceeding out into the hallway and was able to make out the outline of what she believed to be the bathroom door.

This procedure raises an interesting question. While Rule 1035 speaks of considering "affidavits" in passing on the motion, there appears to be no decision which permitted an affidavit which contradicts or attempts to explain away evidence given in a deposition. The danger inherent in such a procedure is obvious, yet subsection (d) of Pa. R. C. P. 1035 states:

"The court may permit affidavits to be supplemented or opposed by depositions."

In 2B Anderson Pennsylvania Civil Practice §1035.23 page 340, the author states "As an escape clause or last-resort feature, the moving party, as well as the opposing party should bear in mind that supplementing affidavits may be filed."

Pennsylvania Rule of Civil Procedure 1035 was adapted from the earlier Federal Rule of Civil Procedure 56 and resort is frequently made to the Federal decisions: Allen v. Kaufmann, 47 D. & C. 2d 433 (1969). The authority on the Federal Rules of Civil Procedure is acknowledged to be Professor James William Moore. In his monumental work, Moore's Federal Practice, vol. 6, p. 2145, he states that affidavits may be used by themselves or in conjunction with other material and that they may be supplemented or opposed by depositions, pointing out, of course, that the weakness of the affidavit is that the affiant is not subject to cross examination. He also says that the courts have been lenient with the affidavits of the party opposing the motion. We have discovered one case which appears to be on point. In United States v. Johns-Manville Corp., 259 F. Supp. 440 (1966), the United States District Court for the Eastern District of Pennsylvania, speaking through Judge Van Dusen, held that even

though certain statements of the affiant contained in his affidavit were in conflict with his deposition, this was not grounds for excluding the affidavit, although the testimony in the deposition would be treated as more reliable. Remembering that we are here review-ing a motion for summary judgment and that such judgment may be entered only in the "clearest" of cases and where there is not the "slightest doubt" as to the absence of a triable issue of fact (Prince v. Pavoni, supra), we are constrained under the facts peculiar to this case to consider the evidence in the affidavit.

There is a multitude of decisions involving situa-tions of this nature to be found in the reports but they necessarily depend largely upon their individual facts. Each of the parties has cited a variety of cases analogous to the present case but dissimilar in some detail. The parties do agree that the various reported decisions upon analysis appear to fall into two class-ifications; those in which a person wanders around in a place absolutely dark and where there is no reason-able necessity for his presence; and other situations where there is some fairly compelling reason for walk-ing in a place which, although dark, is not utterly devoid of light. In the former, recovery has been sum-marily denied, while in the latter, contributory negli-gence is not declared as a matter of law: Slobodzian v. Beighley, 401 Pa. 520 (1960).

It thus appears that the controlling factors in deter-mining the question of contributory negligence in accident cases of this nature are the degree of dark-ness and the reason for the injured's person present in the place of danger: Dively v. Penn-Pittsburgh Corp., supra.

In the present posture of the case at bar, we are clearly of the opinion that the question of plaintiffs'

contributory negligence cannot be summarily dealt with in a pretrial motion. It is not perfectly clear beyond the slightest doubt that the area was completely dark when plaintiff left her bedroom and attempted to enter the bathroom and certainly one cannot say as a matter of law that she was not justified in attempting to reach this destination.

## ORDER

And now, August 2, 1974, defendants' motion for summary judgment is denied.