2. The deceased did not substantially comply with the terms of the insurance policy for revoking the named beneficiary.

3. The broad language of the property settlement agreement in question did not revoke the designated beneficiary under the insurance policy.

4. The divorce did not automatically terminate the ex-spouse's beneficiary designation under the Decedents, Estates and Fiduciaries Code.

## DECREE NISI

And now, March 24, 1981, in accordance with the opinion filed this date, it is hereby ordered, adjudged and decreed that the claimant, Michael W. Stitzel, is entitled to proceeds of Group Insurance Policy No. 11997, in the sum of $23,453.70 plus interest, which is being held by the Farmer's Trust Company in Carlisle.

If there are no exceptions to this decree within ten days, the prothonotary is directed to enter this decree nisi as a final decree.

## Commercial Trading Company, Inc. v. Milsan Mills, Inc.

*Daniel J. Barrett,* for plaintiff.
*Stanley W. Katz,* for defendant.

GATES, *P.J.,* April 14, 1981—This matter is before the court on plaintiff's motion for a partial summary judgment[1] for the recovery of $14,285.90 owed to plaintiff as assignee and paid to the assignor by defendant after notice of the assignment.

Plaintiff, Commercial Trading Company, Inc., a corporation organized and operating its principal place of business in New York, filed a complaint in assumpsit against defendant, Milsan Mills, for the recovery of the payment of a debt owed by defendant to Staylor Industries, Inc. for goods sold to defendant by Staylor in the amount of $29,070.16.

On November 22, 1978 plaintiff became the assignee of Staylor Industries' accounts receivable by virtue of an assignment executed by the parties. On August 9, 1979 defendant received notice of this assignment from plaintiff. Following receipt of this notice, defendant made a payment on account in the amount of $14,285.90 by check dated October

1. See Pa.R.C.P. 1035. A motion for summary judgment authorized by Rule 1035 is basically the same as a motion for judgment on the pleading authorized by Rule 1034(a), with the exception of the broader basis for disposition. Rule 1035 makes express provision for a variety of judgments and orders that are interlocutory. Thus a partial summary judgment is authorized by Rule 1035. See 2B Anderson, Pa. Civ. Prac. §1035.24.

26, 1979 to Staylor. This payment by defendant to Staylor forms the basis for plaintiff's motion for a partial summary judgment.

Simply stated, plaintiff's argument in support of this motion is that defendant made its payment to the wrong party. Since there was a valid assignment to plaintiff from Staylor, all debts covered by the assignment were the property of plaintiff. Therefore, plaintiff is entitled to summary judgment for the amount of money sent to Staylor in satisfaction of an antecedent debt.

It is the position of defendant that the original debt of $29,070.16 owed to Staylor was the subject of negotiations and subsequently an agreement entered into with plaintiff prior to receiving notice of the assignment. Under the terms of the agreement, defendant was to receive a credit of $14,784.26 for the return of merchandise to Staylor and the net balance after deduction for the credit was $14,285.90. The check dated October 26, 1979 for $14,285.90 was sent in satisfaction of the net balance owed to Staylor.

In reviewing the record before us on plaintiff's motion for summary judgment, it is our duty to view it in the light most favorable to defendant: Dowlin v. Coatesville Area School District, 22 Pa. Commonwealth Ct. 433, 350 A. 2d 190 (1975). Here, as in the case of all motions the burden of proof is on the moving party and summary judgment may be entered in only the clearest of cases: Kotwasinski v. Rasner, 436 Pa. 32, 258 A. 2d 865 (1969).

Plaintiff's principal contention is that once an account has been assigned it is the property of the assignee. The law in the Commonwealth governing the assignment of accounts receivable is contained

in the Uniform Commercial Code.[2] Our inquiry is focused on Division 9 of the Code, which sets forth the rights of third parties in an assignment. Section 9318(c) provides as follows:

"(c) Notification to account debtor of assignment.—The account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor."

Paragraph 4 of the complaint alleges that defendant was notified of the assignment of all accounts owed by defendant to Staylor and directed to make payment to plaintiff. Defendant did not challenge plaintiff's averment and it was admitted in the answer. Under section 9318(c), on receipt of the notice of assignment, defendant had a right to demand proof of the assignment and the nature of the rights assigned. It did not do so. There is no evidence that defendant demanded proof of assignment until the question was raised in their answer. Proof of the existence of the assignment was established by plaintiff by attaching a copy of the agreement to the complaint (Exhibit A) and by filing the affidavit of Gerald Grossman, president of Commercial Trading Company, Inc., in which he certifies the validity of the agreement.

2. Act of November 1, 1979, P.L. 255, sec. 1, effective January 1, 1980, 13 Pa.C.S.A. §1101 et seq. (See footnote 5, infra.)

Under a strict interpretation of the code, it would appear that an account debtor may continue making payments to the assignor until the assignee furnishes reasonable proof of the existence of the assignment. However, we do not feel that it was the intent of the legislature to provide the account debtor with an indeterminate period of time in which to make a demand of proof on the assignee.

Using certified mail, plaintiff sent a cover letter and a statement of defendant's accounts which were being assigned to plaintiff. We feel that the notice of assignment sent to defendant represented reasonable identification of the accounts being assigned, within the provisions of section 9318.[3] In order to protect its rights subject to the assignment, including the right to continue making payments to Staylor, the assignor, the burden was on defendant to make a demand on plaintiff to prove the existence of the assignment. What then is the effect of the assignment?

Defendant urges the court to treat the balance owed to Staylor as undetermined since there were some negotiations concerning the granting of credits for goods previously delivered. There remains a genuine dispute as to the amount which plaintiff was entitled to collect at the time of the assignment. That bridge must be crossed when the parties reach it—at trial.

There is no dispute as to what occurred after defendant received notice of assignment from plaintiff. Defendant's check for $14,285.90 was sent to Staylor Industries. It is our interpretation of section 9318 that when an assignee had an account receivable from an assignment and when the account debtor has received notification and reasonable

---

3. Defendant was notified that "all present and future monies due" Staylor were to be paid to plaintiff.

identification of the rights subject to the assignment, the account debtor will be liable to the assignee for having paid the wrong party. In the instant case, upon giving notice of the assignment, plaintiff became the owner of the amounts due under the accounts included in the assignment. The accounts receivable of Staylor from defendant were included in this assignment. By defendant making a payment directly to Staylor on account after the assignment and notice of the same had been received by defendant, plaintiff was being deprived of a right acquired by the assignment.[4]

In a case decided under the former Pennsylvania Uniform Commercial Code, a Federal District Court came to the same conclusion in granting plaintiff's motion for summary judgment under a slightly different factual situation.[5] In Marine National Bank v. Airco, Inc., 389 F. Supp. 231 (W.D. Pa. 1975), plaintiff, Marine Bank, made several loans to the assignor and the bank took back a security agreement which covered the assignor's accounts receivable. The court recognized the fact that an account debtor who had been notified of the rights acquired by the assignor and who paid an amount to the assignor after notice of an assignment of the account rights, would be liable to the assignee for having paid the wrong party and causing the assignee to lose some of its security.

---

4. It is of no significance that the moneys paid were the result of a settlement. It was moneys due Staylor and, thus, within the ambit of the assignment.

5. The provisions of the Uniform Commercial Code, Act of April 6, 1953, P.L. 3, sec. 1, effective July 1, 1954, reenacted October 2, 1959, P.L. 1023, sec. 1, effective January 1, 1960, 12A P.S. § 1-101 et seq., were transferred to Title 13, Pennsylvania Consolidated Statutes without effecting a change in the substantive law.

We find that plaintiff has met its burden of proof and the granting of the motion for summary judgment for $14,285.90 is appropriate.

## ORDER

And now, April 14, 1981, plaintiff's motion for partial summary judgment in the amount of $14,285.90 is granted and the prothonotary is directed to enter judgment in favor of plaintiff, Commercial Trading Company, Inc. and against defendant, Milsan Mills Incorporated, in the amount of $14,285.90 together with interest and costs.