## Bissett v. Pa. Game Commission

*Peter B. Foster,* for plaintiffs.

*Walter F. Froh,* for defendants.

*Jeffrey Rettig,* for additional defendant.

DOWLING, *J.,* May 10, 1983 — In the invasion of Clemson's Island, Scott Bisset, who had gone ashore in the predawn, was shot in the thigh when as day broke the battle began. His company had dug in and when the fighting became intense even considered retreating to the landing craft, but as this entailed crossing an open field which was under a heavy barrage, they stayed on the line.

While the assailant is unknown, it is evident it was not the enemy, but another member of the invasion force, for the island to be subjected was inhabited only by an army of deer.* It seems that the

---

*Apologies to James Lipton and his "Exaltation of Larks" for this inappropriate Veneral term.

Pennsylvania Game Commission had authorized deer hunting on this small island (120 acres) for an eight-day period commencing on December 26, 1981, and restricted to bow and arrow and flintlock rifles, thus making the ensuing engagement a combination of Agincourt and Bunker Hill.

The only previous authorization for combat on Clemson's Island had been in 1977. At that time, 7,626 flintlock licenses had been purchased; by 1980, there were 180,000. The number of registered archers in 1980 had also risen to 276,000. Thus the number of potential combatants on the island in 1981 was significantly greater than that in 1977. Three Game Commission officials who were present on the islands in 1977 issued reports regarding that engagement. All three officials indicated that there were problems encountered and that fighting on the islands in the future would be unsafe because of the anticipated increase in the forces.

Plaintiffs have averred in their complaint that the Game Commission was negligent in authorizing hunting on Clemson's Island in 1981 knowing or having reason to know that an excessive number of hunters would be attracted to the island, which would create a dangerous situation. Plaintiffs further stated that defendants were negligent in not regulating the hunters on the island, having reason to know of the potential danger. It is plaintiffs' contention that the experiences of game officials in 1977, when they observed the hunting to be unsafe due to an excessive number of hunters together with the tremendous increase in the number of available hunters in 1981, put the Game Commission on notice that it was creating a dangerous condition when it set up the hunting in 1981 in the manner that it did. Consequently, plaintiffs argue

that the Game Commission is liable for the harm suffered by plaintiffs when it created the dangerous condition which caused the accident in question. Plaintiffs further maintain that the Game Commission was negligent in not stopping the hunting on the 26th when game officials were present on the shore and could hear the excessive gunfire.

This action has been brought pursuant to 42 Pa.C.S.A. §8522(b) (4), an exception to the doctrine of sovereign immunity. In their motion for summary judgment, defendants claim that the exception does not apply in this case and that they are immune from suit.

Article II, Section I of the Pennsylvania Constitution provides that the Commonwealth, its departments, agencies, boards, commissions and its officials and employees acting within the scope of their duties are immune from suit except as the state legislature may specifically waive such immunity by statute. The legislature has waived such immunity in eight specifically described categories under 42 Pa.C.S.A. §8522, entitled Exceptions to Sovereign Immunity. Plaintiffs claim that one of the exceptions set forth in the statute applies to the fact situation in this case and would permit suit. This section reads as follows:

§8522 Exceptions to Sovereign Immunity

(a) Liability imposed. — The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law

of a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

(b) Act which may impose liability. — The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
. . .

(4) Commonwealth real estate, highways and sidewalks. — A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency· and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a. Commonwealth agency, except conditions described in paragraph (5).

A Commonwealth party is defined under title 42 P.S. §8501 as "A Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." Obviously the Game Commission falls within this definition. It is clear from a reading of 42 Pa.C.S.A. §8522(b) (4) that the plaintiff would be free to sue under this limited waiver provision if the fact situation in the instant case falls within this exception.

The case of Mistecka v. Commonwealth, 46 Pa. Commw. 267, 408 A.2d 159, (1979), deals with the question of interpreting §8522(b) (4). In Mistecka, plaintiffs were injured when rocks were thrown by individuals from a highway overpass and struck the vehicle in which they were travelling on a state highway. Prior to this incident, the state police had received notice of 26 similar incidents over a two-year period of rock throwing upon motorists travel-

ling on the same highway at or near the location where the incident occurred. The Commonwealth Court found that "condition" under the subsection in question is defined as a "state of affairs that hampers or impedes or requires correction" and held that the fact situation described a "condition" within the terms of subsection (b) (4), concluding that the plaintiffs could bring suit against the Commonwealth. This decision has been cited in a number of subsequent decisions. See Uniservice, Inc. Appeal, 51 Pa. Commw. 74, 413 A.2d 787, (1980); Sherbrick et ux. v. Community College of Allegheny County, 53 Pa. Commw. 458, 418 A.2d 791, (1980); and Roberts v. Karotka, 15 D. & C. 3d 685 (1980).

The Game Commission argues that the term *of* in the phrase "dangerous condition of Commonwealth real estate" in subsection(b) (4) was meant to exclude any condition *on* Commonwealth real estate. The Game Commission further argues that the conditions in the instant case occurred *on* Commonwealth real estate and, therefore, do not come under the ambit of subsection (b) (4).

Several of the case decisions under subsection (b) (4) describe dangerous conditions *on* Commonwealth real estate. According to plaintiff's complaint in Rosa v. Baker, 10 D. & C. 3d 69 (1979), downed power lines were "on the ground and also suspended over the roadway" U.S. Route 30. It was further averred that the plaintiff's wife pulled her vehicle to the side of the highway at which point it came in contact with the power lines. The court held that considering the alleged facts, the damages were caused by a dangerous condition of a highway under the jurisdiction of Commonwealth agencies. In Kastner v. PennDot, 46 Pa. Commw. 97, 405 A.2d 1133 (1979), plaintiff was injured when a support column which was being constructed as part of a

state highway collapsed and injured plaintiff. The court found that the described condition was a dangerous condition of Commonwealth real estate under the language of the statute. In both of these cases, the condition in question was clearly located *on* the property and was not part *of* the property.

Defendants cite Pretorati v. Uniservice, Inc., 51 Pa. Commw. 74, 413 A.2d 787 (1980), to advance the contention that a "dangerous condition" must be an intrinsic part of the real estate itself. Uniservice involved a death action that was brought after a woman drowned when she voluntarily left a rental boat to swim in a prohibited part of a lake owned by the Commonwealth.

In dismissing the action, the court stated:

"There is no allegation that special characteristics or attributes of the lake made it dangerous or that the failure to enforce the regulations created a hazardous condition. Rather, Uniservice argues that by "implication" an area in which swimming is prohibited must be considered as containing a "dangerous condition" for the purpose of (a) (4), 42 Pa.C.S.A. §5110 (a) (4). We must disagree . . .

"To state a cause of action within the limited waiver of Section 5110(a) (4), Uniservice had to plead "a state of affairs that hampers or impedes or requires correction." Mistecka v. Commonwealth of Pennsylvania 46 Pa. Commw. 267, 408 A.2d 159, 162 (1979), as well as aver that the resulting condition was dangerous."

We think that the case is distinguishable because the "state of affairs" in the instant matter is correctable, i.e., by limiting the number of hunters or some other method. In any event, Summary Judgment can only be entered in the clearest of cases, Kotwasinski et al. v. Rasner (et al.), 436 Pa. 32, 488 A.2d 204 (1969).

Accordingly, we enter the following

## ORDER

And now, this May 10, 1983, defendants' motion for summary judgment is denied.