## Friend v. Nationwide Insurance Company Inc.

*Edward Rubin*, for plaintiff.
*William H. Kinkead III*, for defendant.

SUBERS, *J.*, November 26, 1986 — Defendant, Nationwide Insurance Company Inc., issued an insurance policy to plaintiff under the terms of which defendant was obligated to provide no-fault insurance benefits to plaintiff in accordance with provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §§1009.101, et seq. (repealed 1984). On December 17, 1979, plaintiff received bodily injuries in an automobile accident. Following the accident, plaintiff notified defendant of her insurance claim for medical expenses incurred as a result of the accident, and defendant paid certain insurance benefits to plaintiff under the no-fault provisions of the policy. Defendant's last no-fault benefit payment was made to plaintiff on May 22, 1981. At that time plaintiff was 18 years old, having been born on June 23, 1962. In December 1981, plaintiff informed defendant that she may have to undergo further medical treatment in the future. Thereafter, in June 1985, plaintiff notified defendant that she would, in fact, require additional medical treatment. Based on an examination and

medical reports subsequently issued by a plastic and reconstructive surgeon in July 1985, plaintiff now seeks medical treatment to correct deformities of her nose and a laceration on her cheek which occurred as a result of the accident on December 17, 1979. However, defendant informed plaintiff that it would not pay her additional benefits.

In order to determine defendant's liability under the policy, plaintiff instituted a declaratory judgment action against defendant on October 1, 1985, more than two years after defendant's last payment of benefits. Defendant filed answer and new matter on January 14, 1986, to which plaintiff replied on February 4, 1986. Plaintiff filed a motion for summary judgment on April 16, 1986. Defendant filed a cross-motion for summary judgment on May 16, 1986. This matter was listed for argument by order of the court on July 17, 1986. On September 11, 1986, upon consideration of the briefs and oral arguments, we granted defendant's motion and denied plaintiff's motion. Plaintiff now appeals this decision to the Superior Court of Pennsylvania.

## ISSUE

Whether plaintiff was under a legal disability within the meaning of 40 P.S. §1009.106(c)(1), tolling the statute of limitations period of section 1009.106(c)(1).

## DISCUSSION

As a preliminary matter, we address the standards to be applied when reviewing a motion for summary judgment. These standards are set forth in Pa.R.C.P. 1035, which provides in pertinent part:

"(b) . . . The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affi-

davits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In the case of *Christo v. Brittany Inc.*, 312 Pa. Super. 255, 263, 458 A.2d 946, 950 (1983) (allocatur denied), the Superior Court held:

"In determining whether there is a dispute of material fact, the court must take that view of the evidence most favorable to the nonmoving party, giving to that party the benefit of all favorable inferences that might reasonably be drawn from the evidence. . . ." See also, *Meyers Plumbing and Heating Supply Company v. West End Federal Savings and Loan Assoc.*, 345 Pa. Super. 559, 563, 498 A.2d 966, 968 (1985).

" 'Summary judgment is granted only in the clearest of cases, where the right is clear and free from doubt.' " *Curran v. Philadelphia Newspapers Inc.*, 497 Pa. 163, 177, 439 A.2d 652, 659 (1981); citing *Kotwasinski v. Rasner*, 436 Pa. 32, 41, 258 A.2d 865, 869 (1969); *Prince v. Pavoni*, 225 Pa. Super. 286, 288, 302 A.2d 452, 454 (1973).

Mindful of these guidelines, we now turn to plaintiff's claim for additional no-fault benefits.

The Pennsylvania No-fault Motor Vehicle Insurance Act, §1009.106, provides in pertinent part:

"(a) In general:—

"(1) No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained.

"(c) Time limitations on actions to recover benefits.—

"(1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either

knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident whichever is earlier. *If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits other than survivor's benefits by either the same or another claimant may be commenced not later than two years after the last payment of benefits.*

"(5) *If a person entitled to no-fault benefits is under a legal disability when the right to bring an action for the benefits first accrues, the period of his disability is not a part of the time limited for commencement of the action.* 40 P.S. §1009.106(a)(1), (c)(1), (c)(5) (repealed 1984) (emphasis added).

Plaintiff's main contention is that prior to June 1985, when she was advised to undergo additional surgery, she lacked the capacity to bring an action for additional no-fault benefits until the necessity of additional medical treatment could be ascertained and the loss sustained. Plaintiff contends, therefore, that prior to June 1985, she was under a "legal disability of impossibility" within the meaning of section 1009.106 (c)(5) which disability tolled the statute of limitations applying to claims for additional benefits under the second sentence of section 1009.106(c)(1). Plaintiff misinterprets the meaning of the term "legal disability of impossibility" and in so doing advances no tenable argument that would justify our excepting her claim from the statute of limitations.

We note that exceptions to statute of limitations have evolved as part of our case law. *Rigotti v. J.C. Penney Casualty Insurance Co.*, 13 D.&C.3d 472, 475 (1980); citing *Barshady v. Schlosser*, 226 Pa. Super. 260, 262, 313 A.2d 296, 298 (1973). The "legal disability" language of section 1009.106(c)(5)

is an exception to the mandatory time limitation set forth in the second part of section 1009.106(c)(1). While the No-fault Act does not define "legal disability," we construe the term in its popular and accepted sense:

"[T]he want of legal capability to perform an act. [The] term is generally used to indicate an incapacity for the full enjoyment of ordinary legal rights; thus persons under age, insane persons and convicts are said to be under disability. . . ." Blacks Law Dictionary 415 (Rev. Fifth Ed. 1979).

"Impossibility" is defined as "[t]hat which, in the constitution and course of nature or the law, no man can do or perform." Id at 680.

We think it is clear, and we agree with counsel for defendant on this point, that plaintiff was legally *capable* of, and possessed the legal right to file an action before the expiration of the two year limitations period specified in section 1009.106(c)(1). Plaintiff, being born on June 23, 1962, was not a minor at the time of defendant's last no-fault payment, and neither incompetent, insane or otherwise incapable of bringing an action for additional benefits within two years of defendant's last payment pursuant to section 1009.106(c)(1).

Plaintiff's claim falls more nearly under the "discovery rule," which is another way in which courts have traditionally held claimants to be legally disabled within the meaning of section 1009.106(c)(5). "Under the discovery rule, the statute of limitations does not begin to run until plaintiff knows or reasonably should have known that he has been injured and that his injury has been caused by another party's misconduct." *Reed v. Pennsylvania National Mutual Casualty Insurance Company,* 342 Pa. Super. 517, 522, 493 A.2d 710, 712 (1985); citing *Cathcart v. Keene Industrial Insulation,* 324

Pa. Super. 123, 135, 471 A.2d 493, 500 (1984). However the Superior Court of Pennsylvania recently held that the discovery rule was inapplicable to the second sentence of section 1009.106(c)(1) in *Reed,* supra. The facts of *Reed* are analguous to those in the instant case, and we find the Superior Court's decision there to be instructive on the issue of whether plaintiff is entitled to additional benefits.

In *Reed,* plaintiff-insured received no-fault benefits on October 13, 1978, for injuries she sustained in an automobile accident. *Reed,* 342 Pa. Super. at 520, 493 A.2d at 711. On February 11, 1981, a physician advised plaintiff that cosmetic and functional ailments she continued to experience as a result of the accident could be treated through additional surgery. Thereafter, on May 20, 1981, three years and seven months after plaintiff initially received insurance benefits, she filed a petition for additional benefits. Plaintiff acknowledges "that her petition was filed 'later than two years after the last payment of benefits,' . . . [but] argue[d] that since [she] had no reason to know of the need and availability of further treatment, she should not be denied the opportunity to obtain additional medicare care." Id. at 521, 493 A.2d at 712. Thus, plaintiff argued, the discovery rule applied to her claim. In rejecting plaintiff's argument, the Superior Court clearly distinguished plaintiff's claim from a claim in which the discovery rule was properly raised, and to which the rule legitimately applied:

"Here, appellant does not ask for additional no-fault benefits because she has just become aware of an injury that she suffered as a result of the accident. Instead, she states that she has become aware that additional treatment is available for the injuries she was aware of. Thus, even if we were to hold that

the discovery rule should be incorporated into section 106(c)(1), as appellant argues it should be, we should have difficulty, on the pleadings before us, in concluding that the rule would apply in this case. . . .

"Nevertheless, assuming that appellant's petition does properly raise the discovery rule, we nevertheless conclude that it is not to be applied to section 106(c)(1)." Id. at 522, 493 A.2d at 712. The Superior Court rationalized that:

"[I]t would be unnecessary, if not redundant, to incorporate the 'discovery rule' into the second sentence of section 106(c)(1), for, by virtue of having made prior claims for no-fault benefits, the victim has acknowledged the injury — in the language of the No-fault Act, a 'loss' has been 'suffered.' In submitting a prior claim appellant met the requirements of the discovery rule — she knew that she had been injured and that her injury had been caused by another party's conduct. (citation omitted). With that knowledge she was placed on notice that any further claim for loss resulting from the accident would have to be made within two years of the last payment." Id. at 523, 493 A.2d at 712.

Instantly plaintiff knew, and had notified defendant in December 1981 that she would require future surgery. She submitted an affidavit from her physician stating that the operations needed on her nose and right cheek were caused by her accident. It is indisputable that plaintiff knew her present facial injuries resulted from her accident. In addition, she knew in December 1981 that an action for future no-fault benefits might be necessary. Thus, like plaintiff in *Reed,* plaintiff in the case at bar does not ask for additional benefits because she has just become aware of injuries that she suffered as a result of her accident. Instead plaintiff has become

aware that additional surgery is available and needed for injuries of which she was already cognizant.

Like the Superior Court in *Reed,* we have difficulty applying the discovery rule to plaintiff's claim. However assuming, arguendo, that the discovery rule did apply to plaintiff's claim, we adopt the persuasive reasoning of the Superior Court and hold that the discovery rule is not to be applied to section 1009.106(c)(1). The Philadelphia County Common Pleas Court similarly so held in *McGlade v. Ohio Casualty Insurance Company,* 18 D.&C.3d 676 (1980), where the court stated:

"Once a benefit has been paid . . . and there is an acknowledged accident-related loss, both the insurance company and the injured party are on notice that a new statute of limitations begins to run from the last payment. . . . If no claim is made for a period of two years, it is presumed that any loss after this trouble-free period is unrelated to the accident and further benefits need not be paid." Id. at 680.

By plaintiff's own admission, defendant's last payment of benefits was more than two years before the commencement of plaintiff's action for additional benefits. Consequently, plaintiff's claim is barred by the statute of limitations provision in section 1009.106(c)(1).

Plaintiff relies on *Bauman v. Nationwide Insurance Co.,* 29 D.&C.3d 189 (1984) to support her contention that the discovery rule applies to section 1009.106(c)(1), and that she was under a legal disability of impossibility. It is true that the *Bauman* court found the discovery rule to be applicable to the limitations period embraced by the second sentence of section 1009.106(c)(1). However, the Superior Court's holding in *Reed,* specifically overrules the discovery rule exception language in *Bauman.*

Furthermore, contrary to plaintiff's claim that "[t]he situation of plaintiff [in the instant case] is the same as that of plaintiff in *Bauman*," the two cases are questionably dissimilar.

In *Bauman,* the plaintiff-insured received medical benefits on October 9, 1977, for a fractured arm he suffered in an automobile accident. On March 27, 1979, a metal plate was implanted into plaintiff's injured arm. Later plaintiff felt pain in his arm, and underwent further surgery to remove the plate on May 4, 1982. Plaintiff then claimed additional expenses from defendant insurance company more than two years after the date of the last payment. The Bucks County Common Pleas Court specifically found that, "[a]t the time the plate was implanted, there was no reason for plaintiff to expect that it would be necessary to have it removed. . . ." Id. at 190. The court concluded: "[T]hat even after earlier receipt of payment, the insured must be allowed two years after his first knowledge that additional medical treatment is required . . . the prescribed statutory period does not begin to run until discovery of the injury is reasonably possible." Id. at 194-195. Instantly, plaintiff knew as early as December 1981 that she would require additional medical treatment. Thus, even if we were to find that *Reed* did not specifically overrule the discovery rule exception language in *Bauman,* under *Bauman* plaintiff's petition for additional benefits would clearly be time barred.

Finally, we note that the Superior Court has consistently interpreted section 1009.106(c)(1) to prohibit additional claims after the two-year limitation period has elapsed. See *Fidelibus v. State Automobile Insurance Association,* 315 Pa. Super. 338, 461 A.2d 1309 (1983); *Fusco v. Keystone Insurance*

*Company*, 312 Pa. Super. 471, 458 A.2d 1390 (1983); *Platts v. Government Employees Insurance Company*, 301 Pa. Super. 379, 447 A.2d 1017 (1982). The Superior Court's interpretation is in harmony with the purpose of section 106(c)(1)'s statute of repose: "to expedite litigation and discourage delay and the presentation of stale claims." *Platts*, 301 Pa. Super. at 382, citing *Insurance Company of North America v. Carnahan*, 446 Pa. 48, 51, 284 A.2d 728 729 (1971). It is well recognized that "[o]ne who asserts a cause of action against another has a duty to use all reasonable diligence necessary to inform [her]self of facts and circumstances upon which the right of recovery is based, and to institute the suit within the statutory period." Id., citing *Schaeffer v. Larzelere*, 410 Pa. 402, 405, 189 A.2d 267 (1963).

We see no reason to depart from the clear line of appellate decisions barring claims similar to that made by plaintiff in the case sub judice. After giving plaintiff the benefit of all favorable inferences that might reasonably be drawn from the evidence before us, we find that plaintiff was not under a legal disability within the meaning of section 1009.106(c)(1) of the No-fault Act, and is now barred from bringing a claim for additional benefits under the second sentence of section 1009.106(c)(1).

## CONCLUSION

Based on the foregoing analysis, our order dated September 11, 1986, granting defendant's cross-motion for summary judgment, and denying plaintiff's motion for summary judgment was proper and should be affirmed.